**DISCIPLINARY COUNSEL *v.* ROBINSON.**

**[Cite as *Disciplinary Counsel v. Robinson*,**

**126 Ohio St.3d 371, 2010-Ohio-3829.]**

*Attorneys — Misconduct — One-year license suspension.*

(No. 2009-2267 — Submitted April 20, 2010 — Decided August 25, 2010.)

ON CERTIFIED REPORT by the Board of Commissioners on Grievances and

Discipline of the Supreme Court, No. 09-013.

_____

**Per Curiam**.

{¶ 1} Respondent, David Jerome Robinson of Columbus, Ohio, Attorney Registration No. 0059369, was admitted to the practice of law in Ohio in 1992, and his attorney registration is currently inactive. Based upon stipulations and findings that respondent violated four of the Rules of Professional Conduct by giving false and misleading testimony and destroying documents that had potential evidentiary value, the Board of Commissioners on Grievances and Discipline recommends that we suspend respondent's license to practice law in Ohio for two years.

{¶ 2} Respondent objects to the board's findings and recommended sanction, arguing that his testimony was not willfully false and therefore he did not violate Prof.Cond.R. 8.4(c) (prohibiting conduct involving dishonesty, fraud, deceit, or misrepresentation), (d) (prohibiting conduct prejudicial to the administration of justice), or (h) (prohibiting conduct that adversely reflects on a lawyer's fitness to practice law). Furthermore, he argues, Prof.Cond.R. 3.4(a) (prohibiting a lawyer from destroying or concealing a document with evidentiary value) applies only to attorneys serving as advocates and not to those acting in their personal capacity as parties to litigation. Consequently, respondent asks that

we find no violation of the Rules of Professional Conduct and thus impose no sanction. In the event that we do find a violation, respondent asks that we impose a sanction that does not involve an actual suspension from the practice of law.

{¶ 3} For the reasons that follow, we overrule respondent's objections and accept the board's findings that respondent violated the ethical standards incumbent on Ohio lawyers. However, we will follow the panel recommendation, rather than the board's recommended sanction, and suspend respondent's license to practice law for 12 months.

**Misconduct**

*Findings of the Panel and Board*

{¶ 4} The parties have stipulated and the board has found that in 2000, respondent joined a Columbus law firm as a partner to develop the firm's government-affairs practice. When the firm formed a lobbying subsidiary in 2005, respondent entered into an employment agreement that required him to keep all business information confidential during his employment and thereafter. In early 2007, respondent began to organize his campaign for elected office. But he abandoned his effort in July of that year, when the firm's managing partner presented respondent with a revised employment agreement with a lobbying subsidiary that would have required him to resign his firm partnership and stop practicing law.

{¶ 5} Believing that his job was in jeopardy, respondent began to investigate employment opportunities with two other Columbus law firms. He sought copies of a number of his firm's documents, including client-billing reports for himself and another employee, engagement letters for current and former clients, and Powerpoint presentations. Respondent met with representatives of the two other firms and faxed a copy of his employment contract and a redacted copy of his current firm's engagement letter to one of them. After executing a confidentiality agreement with one of those firms on

2

August 3, 2007, he disclosed detailed information about his clients and his client-billing reports.

{¶ 6} On August 3 and 4, 2007, while the rest of his firm was on a retreat in Pennsylvania, respondent went to his office, where he packed and removed seven boxes of documents. He took some of those boxes to his home and some to a second house that he was renovating, and he disposed of the rest in a dumpster at the renovation site.

{¶ 7} The firm terminated respondent's employment on August 14, 2007. The following day, he accepted a position as a partner, chairing the government-relations practice group, at the law firm to which he had not disclosed the confidential information. On August 23, 2007, respondent's former employer filed a civil complaint alleging that he had violated the nonsolicitation and nondisclosure covenant of his employment agreement. The firm sought injunctive relief.

{¶ 8} At his August 27, 2007 deposition, respondent testified that he had "made sure not to take any client files or client information" and stated that he "did not take any of the [lobbying subsidiary's] business plans or marketing information." He claimed that he did not recall taking anything related to the subsidiary, and when asked, "So in your possession today either at your house, in your car, or in this law firm or somewhere else, do you have in your possession any documentation that relates to [the subsidiary]?" he testified, "Again, not that I'm aware of."

{¶ 9} Just two days later, at a hearing on the firm's complaint for injunctive relief, respondent testified, "[T]o the best of my knowledge, I did not take any business plans or marketing lists" from the firm. He claimed that he could not give a complete list of what he did or did not have, but denied having taken business plans or "other materials that * * * would be sensitive to [the firm]." He said that he did not recall taking any information relating to the firm

or its lobbying subsidiary while investigating other employment opportunities. Though he admitted that he might have begun to clean out his office after he started looking for a new position, respondent could not recall whether he had done so in August or during the firm's retreat.

{¶ 10} At the August 29 hearing, respondent agreed that the firm's e-mail list of customers and prospective customers is confidential and declared, "And that's why I didn't take it." When questioned about the copies of engagement letters that he had requested, respondent stated, "I know that I do not possess the engagement letters. I know I never intended to use the engagement letters, you know, in any way to the use of confidential information. Again to the best of my knowledge, I believe they're in my office, but I can't attest to that because again I had two hours to clear out my stuff, and I did not have adequate time to do any sort of inventory as to what was in my office and what was not. So all I can really testify to is that I to the best of my knowledge don't possess these engagement letters." However, on further questioning, he did admit that he had taken a redacted version of the engagement letter from the firm and had forwarded it to his new employer.

{¶ 11} The parties further stipulate that after respondent's testimony, the court recessed for lunch, and respondent went to the courthouse cafeteria with his attorney. Before leaving the cafeteria, respondent took his personal trial notebook into the men's restroom, removed a firm report of his 2004-2007 billable hours, tore it up, and disposed of it in the restroom trash receptacle. At the end of the day, he returned home and placed several boxes of firm documents in his car. As he drove toward downtown Columbus, he stopped three times to tear up and dispose of confidential firm documents.

{¶ 12} On September 6, 2007, the trial court granted an agreed temporary restraining order in favor of the firm and ordered respondent to provide the firm with all its confidential information that remained in respondent's possession.

The next day, respondent returned three boxes of materials, including his 2000 to 2006 timesheets, economic-development papers, Powerpoint presentations, and various documents related to training, lobbying, and client strategy.

{¶ 13} Four days later, respondent self-reported his destruction of documents to both the firm and the court. He later provided an inventory of the documents that he had destroyed on August 4 and August 29. On September 20, 2007, respondent testified at a second hearing on the firm's complaint. Subsequently, the trial court granted the firm's motion for injunctive relief.

{¶ 14} The panel and board accepted the parties' stipulations and noted that respondent's misconduct occurred over a brief, three-month period and arose in the context of the contractual dispute with his firm rather than in the provision of legal services to clients. However, they concluded that much of respondent's August 27, 2007 deposition and August 29, 2007 hearing testimony regarding his removal and possession of firm documents was "misleading and false." They further observed that the potential evidentiary value of the documents was not only in their content, but in the fact that respondent possessed them and had violated or intended to violate his contractual obligation by sharing them with others.

{¶ 15} Based upon these stipulations and findings of fact, the panel and board found that respondent had made false statements under oath at his August 27, 2007 deposition and at the August 29, 2007 hearing, thereby violating Prof.Cond.R. 8.4(c), 8.4(d), and 8.4(h). They also concluded that respondent's conduct in destroying documents having potential evidentiary value on the same date that he testified that he did not possess such documents violated Prof.Cond.R. 3.4(a).

*Respondent's Objections*

*Insufficient Evidence of Willful Violation*

{¶ 16} Respondent contends that he did not violate Prof.Cond.R. 8.4(c), 8.4(d), or 8.4(h), because he testified truthfully, based upon his knowledge at the time of both his deposition and the preliminary-injunction hearing. He argues that at the time of that testimony, he genuinely did not remember when he had removed documents from his office, what documents he had removed, or what documents had remained in his possession, despite the fact that he had removed seven boxes of material from his office less than four weeks earlier. Moreover, he claims that he did not intend to conceal the documents, or the fact that he possessed them, from opposing counsel. Therefore, he argues, even if his testimony was misleading, relator has failed to prove that he *willfully* violated Prof.Cond.R. 8.4, and therefore, pursuant to Gov.Bar R. IV(1), he cannot be punished for violating the Rules of Professional Conduct. The record, however, contains ample evidence from which we may infer respondent's willful violation of these rules.

{¶ 17} Respondent offers many excuses for his false and misleading testimony: (1) he was confused by the questions, (2) he believed that the first question, which asked whether he took any documents *after* he left the firm, framed all the subsequent questions, (3) he regularly took work home, but he could not speak "as to what [he] took out of the office or didn't take out of the office," (4) he did not have any litigation experience and was attempting to answer the questions to the best of his ability, (5) he was struggling under substantial pressure from his first experience in a courtroom and as a defendant in a highly contentious lawsuit just two weeks after having been fired, and (6) he had no access to his calendar, and opposing counsel did not offer to refresh his recollection as to the dates in question.

{¶ 18} Respondent's actions and the circumstances surrounding those actions, however, belie his self-serving claims. See *Detling v. Chockley* (1982), 70 Ohio St.2d 134, 137, 24 O.O.3d 239, 436 N.E.2d 208 (state of mind is inferred

from the conduct and surrounding circumstances), overruled on other grounds by *Cabe v. Lunich* (1994), 70 Ohio St.3d 598, 640 N.E.2d 159.  Approximately three weeks before his deposition and preliminary-injunction-hearing testimony, respondent went to his office while the rest of the firm was on retreat and carried seven boxes of documents out of the building.  He did not reveal that these materials were in his possession or offer to inventory them during his deposition testimony.  Instead, he admitted that he had billing sheets and his Microsoft Office contacts, claimed that he did not recall taking anything related to the subsidiary, and emphasized that he did not take "any client files or client information" and that he "did not take any of the business plans or marketing information."  Indeed, he specifically denied having any other documents "that [he was] aware of" related to the firm or its subsidiary in his possession.

{¶ 19} At the preliminary-injunction hearing, just two days later, respondent's memory continued to fail him.  When asked whether he could recall cleaning or clearing things out of his office any time before August 14, 2007, respondent testified, "You know, I might have.  I just don't recall the specific date."  While he knew that he had cleaned his office "in the summer," he could not recall whether he had done so in the six or seven weeks—or more specifically in the three to four weeks—immediately preceding his testimony.  When confronted with surveillance tapes, which, unbeknownst to him, had recorded him exiting the firm's offices with numerous boxes on August 3 and 4, 2007, respondent claimed that the materials he removed were "personal information," that he had never intended to take anything of a "confidential nature," and that he had removed "material that [he] didn't know why [he] had [it] there in the first place."

{¶ 20} The very day that he was confronted with videotape evidence of his surreptitious removal of boxes from the firm's office, respondent, while at the cafeteria with his counsel, went into the men's restroom and destroyed a firm

document that had been in his self-prepared trial notebook during his testimony and disposed of it in the waste can. That night, he went home, reviewed the materials he had removed from his office, and disposed of a number of firm documents in several trash receptacles between his home and his new office in downtown Columbus. Among the documents destroyed in this manner were business plans and marketing lists that respondent had testified were not in his possession. He later acknowledged that he had known that the majority of the materials were in his possession when he testified on August 27, 2007.

{¶ 21} Given the timing and circumstances surrounding respondent's removal of materials from his office, his testimony, and his destruction of documents, the panel and board reasonably concluded that his inability to recall these events was simply "incredible." As we have observed, "it is of no consequence that the board's findings of fact are in contravention of respondent's or any other witness's testimony. 'Where the evidence is in conflict, the trier of facts may determine what should be accepted as the truth and what should be rejected as false.' " *Disciplinary Counsel v. Zingarelli* (2000), 89 Ohio St.3d 210, 217, 729 N.E.2d 1167, quoting *Cross v. Ledford* (1954), 161 Ohio St. 469, 478, 53 O.O. 361, 120 N.E.2d 118. Because the record does not weigh heavily against the findings of the panel, as adopted by the board, "we defer to the panel's credibility determinations, inasmuch as the panel members saw and heard [respondent's testimony] firsthand." *Cuyahoga Cty. Bar Assn. v. Wise*, 108 Ohio St.3d 164, 2006-Ohio-550, 842 N.E.2d 35, ¶ 24.

{¶ 22} Consequently, we accept the board's conclusion that the facts and circumstances clearly and convincingly demonstrate that respondent has willfully engaged in conduct that (1) is deliberately dishonest, (2) is prejudicial to the administration of justice, and (3) adversely reflects upon respondent's fitness to practice law. He has therefore violated Prof.Cond.R. 8.4(c), 8.4(d), and 8.4(h). Accordingly, we overrule respondent's first, second, and fourth objections.

*Application of Prof.Cond.R. 3.4(a) to*
*Attorney Acting as Party to Litigation*

{¶ 23} In his third objection, respondent contends that the board erred in applying Prof.Cond.R. 3.4(a) to his conduct. He contends that the rule, which prohibits a lawyer from unlawfully destroying or concealing a document or other material having potential evidentiary value, applies only to attorneys who are acting in their professional capacity as advocates because Chapter III of the Rules of Professional Conduct is titled "Advocate." Respondent, however, cites no decision from this court or any other court that limits the applicability of the rule in this manner.

{¶ 24} As the board observed, in *In re Melvin* (Del.2002), 807 A.2d 550, the Supreme Court of Delaware applied the Delaware Lawyers' Rules of Professional Conduct 3.4(a) and 3.4(c), which are substantially similar to the Ohio Rules of Professional Conduct, to a respondent's personal conduct that had occurred outside his role as an advocate. Id. at 553. There, the court imposed a one-year suspension from the practice of law after respondent admitted that he had violated a protection order that prohibited him from having contact with his wife and concealed or destroyed his wife's journal or papers, which might have aided in the lodging of a criminal charge against him. Id. at 552.

{¶ 25} Additionally, we observe that in *Attorney Grievance Comm. v. White* (1999), 354 Md. 346, 350, 731 A.2d 447, the Court of Appeals of Maryland imposed reciprocal discipline after the United States District Court for the District of Maryland disciplined an attorney for destroying discoverable evidence and giving false testimony about the extent of that destruction in her capacity as a plaintiff in a civil action. Id. at 364.

{¶ 26} In *White*, the court noted that in dismissing the respondent's underlying employment-discrimination claim, the United States District Court had found that the respondent had (1) destroyed "parts of an autobiographical

manuscript, a substantial portion of which covered events bearing on her claims before the court," (2) lied in her deposition "when she stated that she had destroyed the entire manuscript," and (3) "knowingly and willfully intended to destroy discoverable and relevant evidence, and that her statements to the contrary were not believable." Id. at 350; see *White v. Maryland Public Defender* (1997), 170 F.R.D. 138, 150-151.

{¶ 27} Based upon those findings, the respondent was indefinitely suspended from the practice of law in the United States District Court. *White*, 354 Md. at 351, 731 A.2d 447. Relying upon the findings of fact, conclusions of law, and sanction imposed by the United States District Court, the Court of Appeals of Maryland concluded that respondent's conduct violated Maryland Rules of Professional Conduct 3.4(a), 8.4(c), and 8.4(d). As a consequence of those violations, as well as additional instances of false and misleading testimony (as both an advocate in a client's postconviction proceedings and as the plaintiff in her civil action), the Court of Appeals of Maryland disbarred the respondent. Id.

{¶ 28} Notably, in applying Prof.Cond.R. 3.3 to the respondent's actions as a party to litigation and as an advocate, the Maryland court observed : "Even though she did not represent herself while testifying, candor by a lawyer, in any capacity, is one of the most important character traits of a member of the Bar." Id. at 364.

{¶ 29} Likewise, we have recognized: "One of the fundamental tenets of the professional responsibility of a lawyer is that he should maintain a degree of personal and professional integrity that meets the highest standard. The integrity of the profession can be maintained only if the conduct of the individual attorney is above reproach. He should refrain from any illegal conduct. Anything short of this lessens public confidence in the legal profession — because obedience to the law exemplifies respect for the law." *Cleveland Bar Assn. v. Stein* (1972), 29 Ohio St.2d 77, 81, 58 O.O.2d 151, 278 N.E.2d 670.

**{¶ 30}** R.C. 2921.12 (tampering with evidence) makes it a third-degree felony for *any person* who knows that an official proceeding is in progress or likely to be instituted to destroy documents with potential evidentiary value so as to impair their value or availability as evidence. Thus, in applying Prof.Cond.R. 3.4(a) to respondent's conduct as a party to litigation, we do not hold respondent to a higher standard than a member of the general public. Instead, we recognize that respondent's conduct, be it in a personal or professional capacity, demonstrates a lack of respect for the law that he has been sworn to uphold, thereby undermining public confidence in our justice system. Therefore, we conclude that the prohibitions against the obstruction of access to evidence set forth in Prof.Cond.R. 3.4(a) apply with equal force to attorneys acting in either a personal or professional capacity. Accordingly, we overrule respondent's third objection and adopt the board's finding that respondent's conduct violated Prof.Cond.R. 3.4(a).

### Sanction

**{¶ 31}** When imposing sanctions for attorney misconduct, we consider relevant factors, including the ethical duties that the lawyer violated and the sanctions imposed in similar cases. *Stark Cty. Bar Assn. v. Buttacavoli*, 96 Ohio St.3d 424, 2002-Ohio-4743, 775 N.E.2d 818, ¶ 16. In making a final determination, we also weigh evidence of the aggravating and mitigating factors listed in the Rules and Regulations Governing Procedure of Complaints and Hearings before the Board of Commissioners on Grievances and Discipline ("BCGD Proc.Reg.") 10(B). *Disciplinary Counsel v. Broeren,* 115 Ohio St.3d 473, 2007-Ohio-5251, 875 N.E.2d 935, ¶ 21.

### *Aggravating and Mitigating Factors*

**{¶ 32}** Although the parties did not submit any stipulated factors in aggravation or mitigation, the panel and board found that the following aggravating factors weighed in favor of a more severe sanction: a dishonest or

selfish motive, a pattern of misconduct, multiple offenses, and a refusal to acknowledge the wrongful nature of his conduct. BCGD Proc.Reg. 10(B)(1)(b), (c), (d), and (g). In mitigation, the panel and board each noted respondent's lack of a prior disciplinary record, his excellent reputation in the charitable and political communities, as demonstrated by the testimony of three witnesses, and his general character, as demonstrated by more than two dozen letters from attorneys, judges, law enforcement officers, elected officials, and business and community leaders. BCGD Proc.Reg. 10(B)(2)(a) and (e).

{¶ 33} Citing respondent's pattern of misconduct involving multiple false statements under oath, his destruction of documents to conceal his possession of them, and a selfish motive, relator urged the panel to recommend a 12-month suspension. In contrast, respondent argued that the complaint against him should be dismissed, claiming that his conduct did not violate any Rules of Professional Conduct.

{¶ 34} Noting that our precedent requires an actual suspension when an attorney has engaged in a pattern of dishonesty and finding that the aggravating factors outweighed the mitigating factors, the panel recommended a 12-month suspension from the practice of law. Having considered the relevant factors and having adopted the panel's findings of fact and misconduct, the board, however, recommends that we suspend respondent's license for two years.

{¶ 35} In his final objection, respondent argues that the board erred in finding multiple aggravating factors, ignoring significant mitigating factors, and therefore recommending a sanction that was too harsh. Based upon the foregoing, however, we find that the record clearly and convincingly demonstrates that respondent engaged in a pattern of misconduct involving multiple offenses throughout August 2007 and that he did so with the selfish motives of furthering his own career and preventing the firm from discovering his breach of his employment agreement.

**{¶ 36}** We acknowledge that respondent has self-reported his destruction of documents to both the firm and the trial court and that he has admitted the wrongfulness of that conduct. Throughout this disciplinary proceeding, however, he has steadfastly maintained that his testimony was not false or misleading. Yet the panel and board found, and we agree, that in light of the facts and circumstances of this case, respondent's failure of recollection on the stand is simply not credible. Therefore, we conclude that clear and convincing evidence demonstrates that respondent has refused to acknowledge the wrongful nature of his conduct.

**{¶ 37}** Respondent's arguments that the panel and board failed to consider his mental state at the time of his conduct and the "minimal" injury that his conduct has caused as factors in mitigation of his punishment are likewise without merit.

**{¶ 38}** Although he cites two cases in which we accepted board findings that have considered stress as *a* factor in mitigation, those cases are factually distinguishable. In *Cincinnati Bar Assn. v. Fidler* (1998), 83 Ohio St.3d 396, 397, 700 N.E.2d 323, while the panel received evidence that the respondent was under great personal stress at the time he committed two minor theft offenses, it is not clear that that factor played a significant role in the recommendation or imposition of a sanction. And in *Disciplinary Counsel v. Spencer* (1994), 71 Ohio St.3d 316, 317, 643 N.E.2d 1086, respondent's stress was due, at least in part, to familial circumstances that were beyond his control. Here, in contrast, respondent's stress was the direct result of his own, conscious decisions (1) to seek public office, a move that appears to have precipitated his termination from his employment, (2) to give false and misleading testimony about his removal and possession of documents from his office, and (3) to destroy those documents upon learning that his former firm had videotape evidence of him removing boxes from his office.

**{¶ 39}** Respondent's reliance upon *Disciplinary Counsel v. Walker*, 119 Ohio St.3d 47, 2008-Ohio-3321, 891 N.E.2d 740, for the proposition that we have demonstrated "substantial leniency toward lawyers whose personal conduct illustrates an impairment of their normally sound judgment" is similarly misplaced. In *Walker*, the respondent presented evidence of alcoholism and substance abuse that contributed to his misconduct, and evidence of his successful treatment, so that his impairment qualified as a mitigating factor pursuant to BCGD Proc.Reg. 10(B)(2)(g). Id. at ¶ 14. Here, in contrast, respondent has offered no medical evidence to demonstrate that his "stress" rose to this level of impairment.

**{¶ 40}** Because respondent's claims that his conduct caused no harm to his former employer or his clients ignore the risk of harm that his false and misleading testimony created for the legal profession and the judicial system as a whole, this argument is also without merit.

*Sanctions Imposed in Similar Cases*

**{¶ 41}** We have held that attorney misconduct involving dishonesty, fraud, deceit, or misrepresentation, warrants an actual suspension from the practice of law because this court " 'cannot permit attorneys who lie either to their clients or to the court to continue practicing law without interruption.' " *Disciplinary Counsel v. Fowerbaugh* (1995), 74 Ohio St.3d 187, 190-191, 658 N.E.2d 237, quoting *Disciplinary Counsel v. Greene* (1995), 74 Ohio St.3d 13, 16, 655 N.E.2d 1299.

**{¶ 42}** Respondent relies upon four cases to support his plea for a stayed suspension or a public reprimand. While each of those cases addresses misconduct involving dishonesty, they are all factually distinguishable from this case because they involve fewer incidents of misconduct and a number of mitigating factors that far outweigh one or two aggravating factors.

14

**{¶ 43}** In *Disciplinary Counsel v. Niermeyer*, 119 Ohio St.3d 99, 2008-Ohio-3824, 892 N.E.2d 434, the respondent had committed a single incident involving dishonesty by filing a falsified document with the Bureau of Workers' Compensation. Id. at ¶ 4. Because the mitigating factors, including the respondent's self-reporting, immediate efforts to rectify the consequences of his actions, and his good reputation, outweighed the respondent's dishonest or selfish motive, we imposed a 12-month stayed suspension. Id. at ¶ 9-10.

**{¶ 44}** In *Dayton Bar Assn. v. Ellison*, 118 Ohio St.3d 128, 2008-Ohio-1808, 886 N.E.2d 836, the respondent misled one client about the disposition of her case and neglected two client matters. Id. at ¶ 1, 9. Although respondent had previously received a public reprimand for neglect, we determined that her 27 years of respected practice representing disadvantaged clients, acknowledgement of her wrongdoing, and cooperation in the disciplinary process weighed in favor of a one-year, stayed suspension. Id. at ¶ 14-15.

**{¶ 45}** In *Columbus Bar Assn. v. Stubbs*, 109 Ohio St.3d 446, 2006-Ohio-2818, 848 N.E.2d 843, the respondent had falsified a document in an effort to convince the Ohio Bureau of Motor Vehicles that she had insurance at the time she had received a traffic citation. Id. at ¶ 3-4. Her failure to carry insurance had resulted in the suspension of her driver's license. Id. We determined that mitigating factors of no prior discipline, a cooperative attitude during the disciplinary proceedings, good character and reputation, her genuine remorse for her actions, and her treatment for depression outweighed the single aggravating factor – the commission of multiple offenses. Id. at ¶ 7-8, 12. Therefore, we imposed a six-month, stayed suspension and one year of monitored probation. Id. at ¶ 13.

**{¶ 46}** And in *Columbus Bar Assn. v. Shea*, 117 Ohio St.3d 55, 2008-Ohio-263, 881 N.E.2d 847, we publicly reprimanded the respondent for making a false statement to a child-support enforcement agency in a failed attempt to obtain

a copy of a default notice filed against his former employer. Id. at ¶ 5-6, 17. There, in addition to mitigating factors including no prior discipline and full cooperation in the disciplinary proceedings, we noted that respondent's conduct was "short-lived and harmed no one." Id. at ¶ 12-13.

{¶ 47} We find *Disciplinary Counsel v. Rohrer*, 124 Ohio St.3d 65, 2009-Ohio-5930, 919 N.E.2d 180, to be the most instructive. There, the respondent directed a staff member to deliver a copy of a motion to a local newspaper in violation of the trial court's verbal order prohibiting counsel from discussing the case with the media. Id. at ¶ 8-10. Respondent falsely told the court that his staff had misconstrued his instructions and had leaked the information to the media, and after firing his assistant for divulging confidential information, he wrote a misleading letter to the unemployment-compensation bureau, again suggesting that his assistant was responsible for the leak. Id. at ¶ 12-16, 19, 22. We determined that respondent's conduct in deliberately disobeying a court order and lying about it to the judge during a hearing violated Prof.Cond.R. 3.3(a)(1) (prohibiting a lawyer from knowingly making a false statement of fact or law to a tribunal), 3.4(c) (prohibiting a lawyer from knowingly disobeying an obligation under the rules of a tribunal), 8.4(c), 8.4(d), and 8.4(h). Id. at ¶ 3, 34.

{¶ 48} In aggravation, we found that the respondent in *Rohrer* had committed multiple offenses, had exhibited a selfish or dishonest motive in his misrepresentations to the unemployment-compensation bureau, and had demonstrated a lack of remorse with regard to his violation of the court order. Id. at ¶ 34, 36, 40, citing BCGD Proc.Reg. 10(B)(1)(b), (d), and (g). But in mitigation of a more serious sanction, we found that respondent had no prior disciplinary record and had displayed a cooperative attitude toward the disciplinary proceedings, that the trial court had already imposed sanctions on him, and that he had presented character witnesses attesting to his good reputation. Id. at ¶ 32. See BCGD Proc.Reg. 10(B)(2)(a), (d), (e), and (f).

Observing our precedent favoring an actual suspension for misconduct involving dishonesty, fraud, deceit, or misrepresentation and respondent's deliberate representations to the trial court and another state agency, we concluded that his misconduct warranted an actual six-month suspension from the practice of law. Id. at ¶ 43, 52-53.

{¶ 49} In this case, respondent engaged in a pattern of misconduct involving multiple instances of lying and misrepresentation under oath, as well as the destruction of documents with potential evidentiary value in a pending civil proceeding. Thus, his misconduct is more extensive and more serious than that of the respondent in *Rohrer*. Although he admitted destroying the documents, throughout this disciplinary proceeding, he maintained that his inability to recall significant events, occurring as little as three weeks before his testimony, was genuine. We agree that these aggravating factors outweigh respondent's lack of prior discipline and good reputation.

{¶ 50} Based upon the foregoing, we accept the board's findings that respondent violated the ethical standards incumbent on Ohio lawyers and conclude that a one-year suspension is the appropriate sanction for his misconduct. Accordingly, respondent is hereby suspended from the practice of law in the state of Ohio for one year. Costs are taxed to respondent.

Judgment accordingly.

PFEIFER, LUNDBERG STRATTON, O'DONNELL, and CUPP, JJ., concur.

O'CONNOR and LANZINGER, JJ., dissent and would suspend respondent from the practice of law in Ohio for two years.

BROWN, C.J., not participating.

_____

Jonathan E. Coughlan, Disciplinary Counsel, and Robert R. Berger, Assistant Disciplinary Counsel, for relator.

Hadden Co., L.P.A., and E. Bruce Hadden, for respondent.

_____