**[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as** *Cleveland Metro. Bar Assn. v. Azman,* **Slip Opinion No. 2016-Ohio-3393.]**

NOTICE

This slip opinion is subject to formal revision before it is published in an advance sheet of the Ohio Official Reports. Readers are requested to promptly notify the Reporter of Decisions, Supreme Court of Ohio, 65 South Front Street, Columbus, Ohio 43215, of any typographical or other formal errors in the opinion, in order that corrections may be made before the opinion is published.

SLIP OPINION NO. 2016-OHIO-3393

CLEVELAND METROPOLITAN BAR ASSOCIATION *v.* AZMAN.

**[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *Cleveland Metro. Bar Assn. v. Azman,* Slip Opinion No. 2016-Ohio-3393.]**

*Attorneys—Misconduct—Violations of the Rules of Professional Conduct, including destroying material having potential evidentiary value and making a false statement of material fact in connection with a disciplinary matter—One-year suspension, with six months stayed on conditions.*

(No. 2015-2007—Submitted January 27, 2016—Decided June 15, 2016.)

ON CERTIFIED REPORT by the Board of Professional Conduct of the Supreme Court, No. 2014-092.

_____

**Per Curiam.**

{¶ 1} Respondent, Brandon Louis Azman of Arlington, Virginia, Attorney Registration No. 0087246, was admitted to the practice of law in Ohio in 2011, but he has been registered as inactive since February 5, 2015. Relator, Cleveland

Metropolitan Bar Association, charged him with violating the Rules of Professional Conduct for accessing e-mail accounts of his former employer after his termination, deleting some of those e-mail communications, and then lying about his conduct under oath. Azman stipulated to the charges, and after a hearing, the Board of Professional Conduct recommends that we sanction him with a one-year suspension with six months stayed. Neither party has filed objections to the board's report and recommendation.

{¶ 2} Based on our review of the record, we adopt the board's findings of misconduct and the recommended sanction.

**Misconduct**

{¶ 3} Azman worked as an associate attorney for the Piscitelli Law Firm from March 2012 to August 29, 2013—when Frank Piscitelli terminated him. During his employment, Azman had learned the login credentials, including passwords, for the firm e-mail accounts of Piscitelli and three other employees. On August 30, 2013—the day after his termination—Azman began accessing those e-mail accounts without authorization. Indeed, over the following two-and-a-half weeks, he accessed the accounts at least 20 times. At one point, firm employees had changed their passwords, but Azman was able to obtain their updated login credentials so that he could continue viewing their e-mails.

{¶ 4} During this same time period, Azman sent two e-mails to Piscitelli asking whether he would be willing to write a letter of recommendation for Azman. When Piscitelli did not respond, Azman sent him another e-mail indicating that he had met with one of the law firm's clients, and he proposed the following:

[I]n exchange for you writing a letter of recommendation for me, I would be willing to negotiate a non-compete of sorts with you. I would agree to make no efforts whatsoever to contact former clients of mine for the purpose of bad mouthing you, to try and steal them

away or to convince them to terminate the services of the Piscitelli Law Firm.

**{¶ 5}** In a reply e-mail, Piscitelli indicated that he had terminated Azman for poor work performance and therefore he would not provide a letter of recommendation. Piscitelli also threatened potential legal action against Azman if he contacted any firm clients, harassed any firm employees, or made any additional threats against Piscitelli or the law firm. Piscitelli forwarded this e-mail exchange to another employee in his office.

**{¶ 6}** After receiving Piscitelli's reply, Azman logged into the law firm's e-mail accounts and deleted the communications between him and Piscitelli from both Piscitelli's and the other employee's accounts. Azman also deleted other e-mails he had sent Piscitelli after his termination. The following day, Piscitelli discovered that the e-mails were deleted, and members of his firm contacted local police, who traced the unauthorized access to an IP address registered at Azman's residence.

**{¶ 7}** Piscitelli later agreed not to sign a criminal complaint against Azman relating to his unauthorized access to firm e-mail accounts on the condition that Azman report his conduct to relator. Without a criminal complaint, the local police decided against filing criminal charges against Azman. On October 11, 2013, Azman, through counsel, notified relator that Azman had violated the Rules of Professional Conduct, and on November 1, 2013, counsel notified relator that after Azman's termination from the Piscitelli Law Firm, he had viewed e-mail accounts of attorneys and staff in the firm without their consent or knowledge. However, during a subsequent deposition by relator, Azman denied that he had purposely deleted any law firm e-mails. Not until his disciplinary hearing did Azman finally admit that he had also deleted e-mails while he had access to the accounts.

**{¶ 8}** The board found that Azman engaged in the following professional misconduct: (1) by deleting the e-mail exchanges in which Piscitelli had threatened potential legal action based on information in Azman's prior e-mail, Azman violated Prof.Cond.R. 3.4(a) (prohibiting a lawyer from unlawfully altering, destroying, or concealing material having potential evidentiary value) and 8.4(d) (prohibiting a lawyer from engaging in conduct that is prejudicial to the administration of justice), (2) by accessing firm e-mail accounts without authorization and then deleting e-mails, Azman violated Prof.Cond.R. 8.4(c) (prohibiting a lawyer from engaging in conduct involving dishonesty, fraud, deceit, or misrepresentation), and (3) by making an untruthful statement during his deposition, Azman violated Prof.Cond.R. 8.1(a) (prohibiting an attorney from knowingly making a false statement of material fact in connection with a disciplinary matter).

**{¶ 9}** We agree with these findings of misconduct.

### Sanction

**{¶ 10}** When imposing sanctions for attorney misconduct, we consider several relevant factors, including the ethical duties that the lawyer violated, the aggravating and mitigating factors listed in Gov.Bar R. V(13), and the sanctions imposed in similar cases.

*Aggravating and mitigating factors*

**{¶ 11}** The board found the following aggravating factors: Azman had a selfish motive, he engaged in a pattern of wrongful conduct over a two-week period, he committed multiple offenses, and he knowingly made a false statement during the disciplinary process. *See* Gov.Bar R. V(13)(B) (2), (3), (4), and (6). In mitigation, the board noted that Azman has no prior discipline, he ultimately acknowledged the wrongful nature of his conduct, his misconduct did not involve the provision of legal services or negatively impact a client's case, and he displayed

4

a cooperative attitude toward the disciplinary process, except for his false statement during his deposition. *See* Gov.Bar R. V(13)(C)(1) and (4).

*Applicable precedent*

**{¶ 12}** To support their recommended sanction of a one-year suspension with six months stayed, the parties and the board cite *Disciplinary Counsel v. Engel*, 132 Ohio St.3d 105, 2012-Ohio-2168, 969 N.E.2d 1178, and *Disciplinary Counsel v. Robinson*, 126 Ohio St.3d 371, 2010-Ohio-3829, 933 N.E.2d 1095. We agree that both cases are good guideposts for determining the appropriate sanction in this case.

**{¶ 13}** In *Engel*, we imposed a six-month suspension on an attorney who, while serving as chief legal counsel for a state agency, installed an e-mail filter system that intercepted confidential communications about pending civil and criminal investigations conducted by the Office of the Ohio Inspector General. *Id.* at ¶ 4-6. We noted that although Engel had not intended to intercept such communications when he installed the filter system, upon discovering that the filter had captured confidential e-mails, he did nothing to stop it and left the filter in place for almost a year. *Id.* at ¶ 13. In mitigation, Engel had no prior discipline, he lacked a dishonest or selfish motive, he cooperated in the disciplinary process, he had already been subject to a criminal conviction and sentence for his misconduct, and he presented evidence of good character. The board found no aggravating factors, but we noted that his conduct worked to undermine public trust not only in the legal system but also in state government as a whole. Thus, an actual six-month suspension was warranted. *Id.* at ¶ 9-13.

**{¶ 14}** In *Robinson*, we imposed a one-year suspension on an attorney who removed confidential documents from his former law firm, provided some of those documents to a competitor firm with whom he was seeking potential employment, and then, after his former law firm had sued him, secretly destroyed some of the documents to conceal his possession of them. *Id.* at ¶ 4-7, 11. Robinson also

repeatedly lied about his actions under oath. *Id*. at ¶ 8-10. His misconduct included violations of Prof.Cond.R. 3.4(a), 8.4(c), and 8.4(d), and as aggravating factors, he had a dishonest or selfish motive and refused to acknowledge the wrongful nature of his conduct. *Id.* at ¶ 22-36.

**{¶ 15}** Similar to the attorney in *Engel*, Azman viewed e-mails that he was not authorized to access. But Azman also destroyed e-mails with potential evidentiary value and then lied about his actions under oath. There were no similar findings of destructive or deceitful behavior in *Engel*. Thus, a harsher sanction is warranted here. Azman and the attorney in *Robinson* engaged in similar misconduct, including dishonesty and destroying potentially relevant documents. Azman's misconduct, however, was not as egregious or extensive as the attorney's in *Robinson*. And unlike in that case, the board here found that Azman acknowledged the wrongful nature of his conduct, expressed remorse, and accepted full responsibility for his actions. Thus, we agree with the board that the appropriate sanction in this case falls between the six-month suspension in *Engel* and the one-year suspension in *Robinson*.

### Conclusion

**{¶ 16}** Having reviewed the record, weighed the aggravating and mitigating circumstances, and considered the sanctions imposed in comparable cases, we accept the board's recommended sanction. Brandon Louis Azman is hereby suspended from the practice of law for one year, with six months stayed on the conditions that he commit no further misconduct and that he pay the costs of these proceedings. If Azman fails to comply with the conditions of the stay, the stay will be lifted, and he will serve the entire one-year suspension.

Judgment accordingly.

O'CONNOR, C.J., and PFEIFER, O'DONNELL, LANZINGER, KENNEDY, FRENCH, and O'NEILL, JJ., concur.

_____

Tucker Ellis, L.L.P., Seth H. Wamelink, and Paul L. Janowicz; and Heather Zirke, Bar Counsel, for relator.

McCarthy, Lebit, Crystal & Liffman Co., L.P.A., and Ian Friedman, for respondent.

_____