**[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as** *Columbus Bar Assn. v. Okuley,* **Slip Opinion No. 2018-Ohio-3857.]**

NOTICE

This slip opinion is subject to formal revision before it is published in an advance sheet of the Ohio Official Reports. Readers are requested to promptly notify the Reporter of Decisions, Supreme Court of Ohio, 65 South Front Street, Columbus, Ohio 43215, of any typographical or other formal errors in the opinion, in order that corrections may be made before the opinion is published.

SLIP OPINION NO. 2018-OHIO-3857

COLUMBUS BAR ASSOCIATION *v.* OKULEY.

**[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *Columbus Bar Assn. v. Okuley,* Slip Opinion No. 2018-Ohio-3857.]**

*Attorneys—Misconduct—Multiple violations of the Rules of Professional Conduct—One-year law-license suspension partially stayed on conditions.*

(No. 2017-1417—Submitted January 25, 2018—Decided September 26, 2018.)

ON CERTIFIED REPORT by the Board of Professional Conduct of the Supreme Court, No. 2017-017.

_____

**Per Curiam.**

**{¶ 1}** Respondent, John Joseph Okuley of Columbus, Ohio, Attorney Registration No. 0076748, was admitted to the practice of law in 2003.

**{¶ 2}** In April 2017, relator, Columbus Bar Association, charged Okuley with violating the professional-conduct rules for his behavior both during and after an incident involving his motor vehicle and a bicyclist. Specifically, relator

charged Okuley with intentionally causing a collision with the bicyclist, provoking a physical altercation with an eyewitness to the collision, and misrepresenting the facts of the entire incident to law enforcement and during the ensuing criminal, civil, and disciplinary proceedings. A three-member panel of the Board of Professional Conduct held a hearing, in which Okuley, the bicyclist, two witnesses of the incident, and others testified. Based on the hearing evidence, the panel found that Okuley had engaged in most of the charged misconduct and recommended that he serve a one-year suspension with six months stayed on conditions. Upon review, the board adopted the panel's findings of misconduct but increased the recommended sanction to a two-year suspension with one year conditionally stayed.

{¶ 3} Okuley objects to the board's increased sanction, arguing that we should adopt the panel's recommendation. For the reasons explained below, we sustain Okuley's objections and conclude that a one-year suspension with six months conditionally stayed is the appropriate sanction in this case.

**Misconduct**

*Count one: the bicycle incident and Okuley's criminal proceeding*

{¶ 4} On April 9, 2015, Okuley, while driving on a residential street, stopped his car behind a garbage truck and another large vehicle that were partially blocking the road. Eric Hansen approached Okuley's car from behind on his bicycle and decided to bypass the lineup of cars. Okuley's recollection of the subsequent events differs greatly from the recollections of Hansen and the other witnesses who testified during Okuley's disciplinary proceedings.

{¶ 5} Okuley testified that Hansen smacked or hit his car when Hansen biked past the vehicle. Believing that Hansen may have damaged the vehicle, Okuley said he followed Hansen to another street in an effort to make him stop. Okuley testified that after Hansen made an obscene gesture toward him, he wanted to speak with him. Therefore, he drove his car around Hansen and stopped about

2

50 yards in front of him. According to Okuley, Hansen then intentionally rode his bicycle into the rear of Okuley's car. Okuley testified that he exited the car and began conversing with Hansen, who stated that he would call the police.

{¶ 6} At some point thereafter, John Bahling, the first witness on the scene, began video recording Okuley with his mobile phone. Okuley claimed that he asked Bahling to stop recording, but Bahling refused. The situation escalated into a physical altercation between Okuley and Bahling, and during the scuffle, Bahling's phone dropped to the ground. Okuley testified that he picked up the phone and held onto it because he believed that he had been assaulted, and he wanted to preserve evidence—i.e., the video on Bahling's phone—of the assault until the police arrived. A second witness on the scene, Daniel Walker, separated Okuley and Bahling, and Okuley called 9-1-1. Relator introduced a recording of Okuley's 9-1-1 call into evidence. During the call, Okuley stated, "[A] biker ran into the back of my car * * *. And two guys hit me."

{¶ 7} Hansen testified that he never smacked Okuley's car or otherwise provoked Okuley when he biked past the lineup of vehicles. According to Hansen, after he turned off the street with the stopped traffic, Okuley followed him and then raced past him, pulled in front of him, and slammed on his brakes. Hansen testified that he braked to the fullest extent possible, but he nevertheless struck the rear of Okuley's car and fell to the ground, and his bike was extensively damaged. Hansen claimed that Okuley came very close to him and then loudly accused him of purposely hitting his car. Around that time, Bahling appeared and stated that he had seen the entire episode and was recording the incident with his cell phone. Relator played a short video clip from Bahling's phone—recorded before the phone was damaged—showing Okuley confronting Hansen and then approaching Bahling and attempting to grab his phone. Hansen then called 9-1-1, and while on the phone with the dispatcher, he witnessed the physical altercation between Okuley and Bahling. In the recording of Hansen's 9-1-1 call, Hansen described how Okuley

became violent with Bahling, attempted to steal Bahling's phone, and ultimately stomped on the phone when it fell to the ground during the scuffle.

{¶ 8} Bahling's testimony was consistent with Hansen's. Bahling testified that he had witnessed Okuley speed past Hansen, pull in front of him, and slam on the brakes, all of which caused Hansen to crash into the vehicle and fall to the ground. Bahling, who is a physician, stopped his own car to ensure that Hansen was not hurt. Bahling testified that because Okuley was aggressive toward Hansen, he started recording Okuley. According to Bahling, Okuley then tried to take his phone, and in doing so, Okuley got hold of Bahling's sunglasses, put them in his pocket, and said, "These are mine now," which led to the physical altercation between the two. According to Bahling, Walker—the second witness—eventually separated them, but Bahling's phone had fallen to the ground. Bahling testified that Okuley had used the hard sole of his shoe to stomp on the phone and then took possession of it until the police arrived.

{¶ 9} Walker and one of the responding police officers also testified at Okuley's disciplinary hearing. Walker stated that when he arrived on the scene, Okuley and Bahling were already in an intense verbal conflict, which quickly escalated into a physical "wrestling match." Walker corroborated Bahling's testimony that at some point, Bahling's cell phone fell to the ground and Okuley smashed the phone with his foot. The police officer testified that when he arrived on the scene, Okuley told him that Hansen had "purposefully" run into the back of his vehicle and that he had tried to take Bahling's phone "for evidence." According to the officer, Okuley also stated that when Bahling refused to hand over the phone, it had fallen to the ground, and the fall had caused the phone's damage. The officer's report indicated that he had told Okuley he could not take another person's belongings, but Okuley replied, "I'm pretty sure you're wrong officer * * *. I'm allowed to collect evidence."

{¶ 10} The city of Columbus later charged Okuley with criminal damaging, a second-degree misdemeanor, for shattering Bahling's cell phone. Okuley pleaded not guilty and in statements to the prosecutor denied stomping on the phone. Okuley appeared for his August 10, 2015 trial, but he left the courthouse when the proceeding did not commence at the scheduled time. Okuley did not request a continuance or otherwise inform the prosecutor or the court before leaving. As a result, the court issued a warrant for his arrest, and the police later arrested him.

{¶ 11} In November 2015, Okuley filed a pro se motion to dismiss the criminal complaint, and in his motion, he asserted that Bahling had "assaulted" him. In February 2016, Okuley entered a no-contest plea, and after finding him guilty, the court imposed a suspended 90-day jail sentence, ordered Okuley to make restitution to Bahling in the amount of $950 and to pay a $100 fine, and placed him on community control until he made restitution and paid the fine and court costs. In March 2016, Okuley complied with all these requirements.

{¶ 12} Based on this evidence, the board found that by destroying Bahling's cell phone and rendering any additional video recordings unrecoverable, Okuley violated Prof.Cond.R. 3.4(a) (prohibiting a lawyer from unlawfully altering, destroying, or concealing material having potential evidentiary value) and that by providing false information to the police, the prosecutor, and the court, Okuley violated Prof.Cond.R. 8.4(c) (prohibiting a lawyer from engaging in conduct involving dishonesty, fraud, deceit, or misrepresentation). In addition, the board found that by leaving the courthouse on the date of his criminal trial, Okuley violated Prof.Cond.R. 3.4(c) (prohibiting a lawyer from knowingly disobeying an obligation under the rules of a tribunal) and 8.4(d) (prohibiting a lawyer from engaging in conduct that is prejudicial to the administration of justice). And by deliberately causing Hansen to collide with his car, provoking the physical confrontation with Bahling in an attempt to seize his cell phone, deliberately crushing the cell phone, and providing false and misleading statements about the

incident, the board determined that Okuley violated Prof.Cond.R. 8.4(h) (prohibiting a lawyer from engaging in conduct that adversely reflects on the lawyer's fitness to practice law). *See Disciplinary Counsel v. Bricker*, 137 Ohio St.3d 35, 2013-Ohio-3998, 997 N.E.2d 500, ¶ 21. We agree with these findings of misconduct.

*Count two: relator's disciplinary investigation and Bahling's civil suit*

**{¶ 13}** After learning of Okuley's conviction, relator commenced a disciplinary investigation and later deposed Okuley. During the deposition, Okuley testified that Hansen had hit his car twice, that Bahling had grabbed him from behind and started the physical scuffle, and that he did not grab Bahling's phone but was merely trying to keep Bahling from erasing the video of the assault. The board found that Okuley's deposition testimony was "clearly false and contradicted by the testimony of all of the witnesses at the scene, as well as the video recording and the recording of Hansen's 911 call." The board therefore found that by giving untruthful deposition testimony, Okuley violated Prof.Cond.R. 3.3(a)(3) (prohibiting a lawyer from offering evidence that the lawyer knows to be false) and 8.1(a) (prohibiting a lawyer from knowingly making a false statement in connection with a disciplinary matter).

**{¶ 14}** In April 2016, Bahling filed a civil lawsuit against Okuley. In his pro se answer, Okuley alleged that Hansen had "twice intentionally collided" with his vehicle, that Bahling had "needlessly interceded in a minor traffic incident[,] became enraged and attacked Defendant Okuley," and that after the altercation, Okuley had "picked up the telephone and attempted to prevent Bahling from destroying evidence of Bahling's attack on Okuley." Okuley expressly denied stepping on or smashing Bahling's phone. And in a pro se counterclaim, Okuley alleged that he had suffered injuries as a result of Bahling's assault, that Bahling had "destroyed evidence that documented his unprovoked assault on Okuley," and that Bahling had committed perjury by offering evidence to the police and to the

6

municipal court that Bahling had "intentionally altered." Okuley and Bahling later settled the civil suit, with Okuley agreeing to pay Bahling $5,000.

**{¶ 15}** The board found that the above-quoted allegations in Okuley's answer and counterclaim were untruthful and that therefore by making these false assertions, Okuley violated Prof.Cond.R. 3.1 (prohibiting a lawyer from bringing or defending a proceeding, or asserting or controverting an issue in a proceeding, that is unsupported by law or fact), 3.3(a)(1) (prohibiting a lawyer from knowingly making a false statement of fact or law to a tribunal), and 8.4(c). We agree with these findings of misconduct.

**Sanction**

**{¶ 16}** When imposing sanctions for attorney misconduct, we consider several relevant factors, including the ethical duties that the lawyer violated, the aggravating and mitigating factors listed in Gov.Bar R. V(13), and the sanctions imposed in similar cases.

*Aggravating and mitigating factors*

**{¶ 17}** As aggravating factors, the board found that Okuley displayed a selfish or dishonest motive, engaged in a pattern of misconduct, and made false statements during the disciplinary process. *See* Gov.Bar R. V(13)(B)(2), (3), and (6). In mitigation, Okuley lacks a prior disciplinary record, he submitted evidence of good character or reputation, and other criminal and civil sanctions have been imposed for his misconduct. *See* Gov.Bar R. V(13)(C)(1), (5), and (6).

**{¶ 18}** The board also noted that in March 2016—after Okuley's misdemeanor conviction but during relator's disciplinary investigation—Okuley suffered serious injuries as a result of a multiple-vehicle accident. In July 2017, he entered into a three-year mental-health contract with the Ohio Lawyers Assistance Program ("OLAP"), in which he agreed to continue treatment with a psychologist to address symptoms of depression that were exacerbated by the March 2016 accident. Because there was no evidence that Okuley's disorder contributed to the

cause of his misconduct, the board determined that the disorder did not qualify as a mitigating factor under Gov.Bar R. V(13)(C)(7).

*The panel's and board's recommended sanctions and Okuley's objections*

{¶ 19} The three-member panel recommended that we suspend Okuley's law license for one year, with six months stayed on conditions. The panel recognized that although Okuley's misconduct did not involve any clients, he nevertheless harmed the public by creating danger on the roadway for Hansen, acting violently toward Bahling, and engaging in a pattern of deceitful conduct with law enforcement, the courts, and relator. The panel was also influenced by the fact that Okuley had not acknowledged the wrongful nature of his conduct.

{¶ 20} To support its recommended sanction, the panel primarily relied on two cases: *Cleveland Metro. Bar Assn. v. Azman*, 147 Ohio St.3d 379, 2016-Ohio-3393, 66 N.E.3d 695, and *Warren Cty. Bar Assn. v. Vardiman*, 146 Ohio St.3d 23, 2016-Ohio-352, 51 N.E.3d 587. In *Azman*, an attorney repeatedly accessed e-mail accounts of attorneys in his former law firm after his termination, deleted e-mail communications that might have had evidentiary value in a threatened legal action against him, and then lied about his actions at a deposition with relator. Considered mitigating were that the attorney had no disciplinary record, his misconduct did not involve the provision of legal services, and he eventually cooperated in the disciplinary process and acknowledged the wrongfulness of his conduct. Aggravating factors included a selfish motive, ongoing misconduct, and dishonesty during the disciplinary investigation. Based on this conduct, we imposed a one-year suspension with six months stayed on conditions.

{¶ 21} The attorney in *Vardiman* also engaged in repeated acts of deceitful conduct. In a client's child-support action, he improperly signed the name of an unrepresented party on four separate documents and then filed the fraudulent documents in court. And in a separate matter, he falsely signed the name of a witness to a will and power of attorney. The lawyer had a prior attorney-registration

8

suspension, but considered mitigating were that he made full disclosures to the board, presented positive character evidence, and demonstrated the existence of a mental disorder that contributed to his misconduct. Given the mitigating evidence and his acceptance of responsibility, we suspended his law license for one year, with six months stayed on conditions.

{¶ 22} In contrast to the panel, the board determined that the circumstances here require a more severe sanction than that given in *Azman* and *Vardiman*, citing Okuley's deceit from the outset of this matter, his evasive and untruthful deposition and hearing testimony, and his failure to acknowledge the wrongful nature of his conduct or express any remorse. The board therefore increased the panel's recommended sanction to a two-year suspension, with one year conditionally stayed, and recommended imposing an additional condition for reinstatement.

{¶ 23} Okuley objects to the board's increased sanction and requests that the court accept the panel's recommended sanction. The board erred, according to Okuley, by not giving more mitigating weight to the fact that he has already been sanctioned in the criminal and civil proceedings for his misconduct. Okuley also asserts that the board failed to recognize that after listening to some of the witness testimony at his disciplinary hearing, he reconsidered his position on whether he damaged Bahling's phone.

*Disposition*

{¶ 24} We find that Okuley's misconduct here is comparable in nature and severity to the misconduct in the cases cited by the panel, especially *Azman*, in which the attorney broke into e-mail accounts of his former employer, deleted e-mails damaging to him, and then lied about his conduct under oath. Additionally, the balance of mitigating and aggravating factors here is similar to that in *Azman*. Although the attorney in *Azman* ultimately accepted responsibility for his actions, no criminal charges were filed against him because his former employer had agreed not to sign a criminal complaint if the attorney reported his conduct to disciplinary

authorities. *See Azman*, 147 Ohio St.3d 379, 2016-Ohio-3393, 66 N.E.3d 695, at ¶ 7. Here, Okuley did not accept responsibility for all his misconduct. But unlike the attorney in *Azman*, Okuley has suffered consequences outside of the attorney-disciplinary process: he was convicted of a misdemeanor, he paid restitution to Bahling for the damaged phone, he paid a criminal fine and court costs, and he paid $5,000 to settle the civil suit.

{¶ 25} Consistent with *Azman* and considering the fact that the panel members had the opportunity to observe the various witnesses firsthand, we sustain Okuley's objection and agree with the panel that a one-year suspension with six months conditionally stayed is the appropriate sanction in this case.

### Conclusion

{¶ 26} For the reasons explained above, John Joseph Okuley is suspended from the practice of law in Ohio for one year, with the final six months of the suspension stayed on the conditions that he maintain compliance with his OLAP contract and engage in no further misconduct. If Okuley fails to comply with either condition of the stay, the stay will be lifted and he will serve the full one-year suspension. In addition, we condition Okuley's reinstatement on his providing proof that he is in compliance with his OLAP contract and any extension of that contract. Upon reinstatement, Okuley must maintain compliance with his OLAP contract and any extension of it. Costs are taxed to Okuley.

Judgment accordingly.

O'CONNOR, C.J., and O'DONNELL, KENNEDY, FRENCH, MOCK, FISCHER, and DEWINE, JJ., concur.

RUSSELL J. MOCK, J., of the First District Court of Appeals, sitting for O'NEILL, J.

_____

Isaac Wiles and Joanne S. Beasy; Lori J. Brown, Bar Counsel, and A. Alysha Clous, Assistant Bar Counsel, for relator.

10

James E. Arnold & Associates, L.P.A., and Alvin E. Matthews Jr., for respondent.

_____