Jonathan E. Coughlan, Disciplinary Counsel, and Joseph M. Caligiuri, for relator.

Howard Joel Freedman, pro se.

DISCIPLINARY COUNSEL *v.* FRAZIER.

[Cite as *Disciplinary Counsel v. Frazier,*
110 Ohio St.3d 288, 2006-Ohio-4481.]

(No. 2006–0124—Submitted May 9, 2006—Decided September 13, 2006.)

———

**Per Curiam.**

{¶ 1} Respondent, Arthur Ray Frazier of Strongsville, Ohio, Attorney Registration No. 0063635, was admitted to the Ohio bar in 1994.

{¶ 2} On July 3, 2002, we indefinitely suspended respondent's license to practice law for professional misconduct involving his personal use of entrusted client funds. *Cleveland Bar Assn. v. Frazier,* 96 Ohio St.3d 46, 2002-Ohio-2994, 770 N.E.2d 1006. On March 3, 2003, we found respondent in contempt for his failure to file an affidavit verifying compliance with Gov.Bar R. V(8)(E) and our order requiring him (1) to notify all clients, opposing counsel, and co-counsel of his indefinite suspension by certified mail and (2) to return all client files and refund all unearned fees. *Cleveland Bar Assn. v. Frazier,* 98 Ohio St.3d 1469, 2003-Ohio-916, 784 N.E.2d 704. Respondent's license remains under indefinite suspension.

{¶ 3} On June 23, 2005, relator, Disciplinary Counsel, charged respondent in an amended complaint with 15 additional counts of professional misconduct, the 11th and 13th of which relator later dismissed. Respondent admitted most of the facts alleged in the complaint and that he had violated some Disciplinary Rules. A panel of the Board of Commissioners on Grievances and Discipline heard the cause on October 27, 2005, and made findings of misconduct and a recommendation, which the board adopted.

## Misconduct

{¶ 4} Count I charged respondent with failing to maintain a client trust account. The remaining 12 counts charged that respondent had failed to properly represent numerous clients prior to his indefinite suspension and had continued to represent two clients after the suspension. In finding many of the alleged Disciplinary Rule violations, the panel and board noted that respondent's misconduct bore a marked resemblance to his earlier transgressions inasmuch as he continued to use clients' funds as his own, neglected their cases, and did not return unearned fees. Also, respondent had received the original complaint in 2003 but did not file an answer to it for over one year.

### *Count I—Client Trust Account*

{¶ 5} Respondent admitted that at no time during the underlying events did he deposit entrusted client funds into a separate, identifiable, interest-bearing bank account as required by DR 9–102(A) and in accordance with R.C. 4705.09. The board thus found respondent in violation of DR 9–102(A).

### *Count II—Tracy*

{¶ 6} In January 2002, Tina Tracy retained respondent to appeal her son's criminal conviction and to file a motion for his judicial release. Tracy paid respondent $5,000, apparently through a nonlawyer who regularly referred potential clients to respondent and retained a percentage of the legal fees they paid.[1] Respondent did nothing in this client's case before his indefinite suspension took effect on July 3, 2002.

{¶ 7} Tracy asked respondent to return the $5,000 fee. In May 2002, respondent arranged for Tracy's receipt of a $1,400 cashier's check and a money order for $800. The name of a previous payee had been obscured on the money order and was replaced with Tracy's name. Although respondent insisted that the money order was valid, it has not been cashed. Respondent returned another $2,800 on January 17, 2003, after the Tracy grievance was filed.

---

1. Relator did not charge that respondent had impermissibly shared fees with a nonlawyer in violation of DR 3–102(A).

{¶ 8} The board found that in failing to properly represent Tracy, respondent had violated DR 1–102(A)(6) (prohibiting conduct that adversely reflects on a lawyer's fitness to practice law), 2–106 (prohibiting a lawyer from charging or collecting a clearly excessive fee), 2–110(A)(3) (requiring the return of unearned fees), 6–101(A)(3) (prohibiting the neglect of an entrusted legal matter), 7–101(A)(1) (prohibiting a lawyer from intentionally failing to seek a client's lawful objectives), 7–101(A)(2) (prohibiting a lawyer from intentionally failing to carry out a contract of professional employment), 9–102(A) (requiring a lawyer to deposit all client funds, other than advances for costs and expenses, in a separate, identifiable trust account), and 9–102(B)(4) (requiring a lawyer to promptly pay or deliver funds to which the client is entitled). Apparently because respondent delayed in answering relator's initial complaint, the board also found a violation of Gov.Bar R. V(4)(G) (requiring a lawyer to cooperate in disciplinary proceedings).

### Count III—Finney

{¶ 9} In February 2002, Karen Finney borrowed $5,000 to pay respondent to represent her son, Alan Vincent, who at the time was under investigation by police in Michigan. Respondent accepted this fee without informing Finney that he was not licensed to practice law in Michigan. In April 2002, after Vincent's arrest, respondent attempted to appear at Vincent's arraignment in Michigan, but because he was not licensed in that state, the court did not permit respondent to speak on his client's behalf. Then, the court set bond and a preliminary-examination date without Vincent's having any representation by counsel.

{¶ 10} After the April 17 preliminary examination, which respondent did not attend, Finney called respondent to fire him, and respondent agreed to return unearned fees by April 22. As of the panel hearing, respondent had not returned any part of Finney's fee.

{¶ 11} The board found that in failing to properly represent Vincent, respondent had violated DR 1–102(A)(4) (prohibiting conduct involving dishonesty, fraud, deceit, or misrepresentation), 1–102(A)(5) (prohibiting conduct that is prejudicial to the administration of justice), 1–102(A)(6), 2–106, 2–110(A)(3), 3–101(B) (prohibiting a lawyer from practicing law in violation of the professional regulations of a jurisdiction), 6–101(A)(3), 7–101(A)(2), 7–101(A)(3) (prohibiting a lawyer from intentionally causing a client prejudice or damage), 9–102(A), and 9–102(B)(4).

### Count IV—Hellinger

{¶ 12} In May 2002, Dale Hellinger paid respondent $3,500, apparently through respondent's nonlawyer associate, to defend Hellinger against felony criminal charges. On May 20, 2002, respondent missed an arraignment, requiring Hel-

linger to enter his plea of not guilty, without the benefit of counsel. A change-of-plea and sentencing hearing was then scheduled in Hellinger's case for July 10, 2002. Although respondent's indefinite suspension had taken effect by that time, respondent did not notify his client as required, return the client's file, or return unearned fees.

{¶ 13} On February 2, 2005, respondent finally wrote to Hellinger, explaining that he had been unable to represent him because of his license suspension. Respondent also promised to try to make restitution and offered to refund $1,000 of the $3,500 fee. As of the panel hearing, however, respondent had repaid nothing.

{¶ 14} The board found that in failing to properly represent Hellinger, respondent had violated DR 1–102(A)(5), 1–102(A)(6), 2–110(A)(3), 6–101(A)(3), 7–101(A)(1), 7–101(A)(2), 7–101(A)(3), 9–102(A), and 9–102(B)(4), and Gov.Bar R. V(8)(E) (requiring a suspended attorney to notify all clients, return files, and refund unearned fees).

### Count V—Wolfe

{¶ 15} Reverend Barry Wolfe retained respondent to defend him against allegations of inappropriate behavior. Faced with disciplinary proceedings within his church and possible criminal charges, Reverend Wolfe paid respondent $3,000 in March 2001 and later paid an additional $2,000.

{¶ 16} In January 2002, respondent attended only one day of the church's two-day disciplinary hearing regarding Wolfe and provided Wolfe legal advice consistent with church rules that prevented him from speaking on Wolfe's behalf. After his July 2002 suspension, respondent failed to immediately advise Wolfe that he could no longer represent him. On September 26, 2005, shortly before the panel hearing, respondent finally wrote to Wolfe, told him of the suspension, and offered to return $2,000 in unearned fees. As of the panel hearing, respondent had repaid Wolfe nothing.

{¶ 17} The board found that in failing to properly represent Wolfe, respondent had violated DR 1–102(A)(6), 6–101(A)(3), 7–101(A)(1), 7–101(A)(2), 7–101(A)(3), 9–102(A), and 9–102(B)(4).

### Count VI—Slay

{¶ 18} In October 2001, Robby Slay paid respondent $5,000, apparently again through respondent's nonlawyer associate, to defend Slay against criminal charges. Respondent appeared at a civil-protection-order hearing and a pretrial on Slay's behalf.

{¶ 19} After his indefinite suspension took effect, respondent did not notify Slay as required, nor did he return the client's file or unearned fees. On

September 26, 2005, respondent wrote to Slay, disclosed the suspension of his license, and offered to refund $500 in unearned fees. As of the hearing date, respondent had not repaid Slay.

{¶ 20} The board found that in failing to properly represent Slay, respondent had violated DR 1–102(A)(5), 1–102(A)(6), 2–110(A)(3), 7–101(A)(1), 7–101(A)(2), 7–101(A)(3), 9–102(A), and 9–102(B)(4), and Gov.Bar R. V(8)(E).

### Count VII—Long

{¶ 21} In February 2002, Larry Long retained respondent to obtain an early release from prison for his brother. Long paid respondent $5,000, again through respondent's nonlawyer associate. Respondent performed no legal services.

{¶ 22} Respondent did not immediately notify Long of his indefinite suspension as required. Finally, on September 26, 2005, respondent wrote to Long, disclosed his suspension, and offered to repay the $5,000 fee if he could find a way. As of the panel hearing, respondent had paid Long nothing.

{¶ 23} The board found that in failing to properly represent Long, respondent had violated DR 1–102(A)(6), 2–106, 2–110(A)(3), 7–101(A)(1), 7–101(A)(2), 7–101(A)(3), 9–102(A), and 9–102(B)(4), and Gov.Bar R. V(8)(E).

### Count VIII—Buchholz

{¶ 24} In May 2002, Donald Buchholz, a truck driver, retained respondent to defend him against a citation for a speeding ticket and a seat-belt violation. Buchholz paid respondent $1,500 through respondent's nonlawyer associate. Buchholz was scheduled for two court dates in June 2002. Respondent did not attend either hearing.

{¶ 25} Respondent did not immediately advise Buchholz of his July 2002 suspension from practice as required, nor did he return Buchholz's file or fees. At some point, respondent advised Buchholz that he had assigned his case to other counsel, a decision respondent made without first consulting his client. Respondent claimed to have paid the successor counsel $1,000, but he had no idea whether that attorney completed the representation.

{¶ 26} On September 26, 2005, respondent wrote to Buchholz, offering to refund $500 of his fee. As of the panel hearing, respondent had paid Buchholz nothing. On December 22, 2003, however, the Clients' Security Fund of Ohio awarded Buchholz $1,200 on his claim against respondent.

{¶ 27} The board found that in failing to properly represent Buchholz, respondent had violated DR 1–102(A)(6), 2–106, 2–110(A)(3), 6–101(A)(3), 7–101(A)(1), 7–101(A)(2), 9–102(A), and 9–102(B)(4), and Gov.Bar R. V(8)(E).

## Count IX—Ligon

{¶ 28} In June 2002, Reverend James Ligon paid respondent $500 to resolve discrepancies in Ligon's credit report. Respondent prepared and sent a letter for this purpose, but he sent it to the wrong address. The letter was of no help to Ligon, and respondent performed no other services for his client.

{¶ 29} On February 2, 2005, respondent by letter advised Reverend Ligon of his suspension and offered to return Ligon's $500 by March 15, 2005. As of the panel hearing, respondent had refunded only $250 of the $500 fee.

{¶ 30} The board found that in failing to properly represent Ligon, respondent had violated DR 2–110(A)(3), 9–102(A), and 9–102(B)(4), and Gov.Bar R. V(8)(E).

## Count X—Simerka

{¶ 31} In 2001, Deborah Simerka retained respondent to represent her in a personal-injury case. Respondent accepted the case on a contingent-fee basis without committing the agreement to writing. Respondent filed suit on Simerka's behalf, and the court scheduled an arbitration hearing for August 30, 2002.

{¶ 32} Because of his July 2002 suspension, respondent transferred the case, apparently without consulting his client, to another attorney, who agreed to represent Simerka during the arbitration. The arbitration panel awarded Simerka $7,800 while she was represented by the successor counsel. On October 3, 2002, however, three months after his suspension, respondent filed a notice of appeal on Simerka's behalf. In filing the appeal, respondent swore in an affidavit that he was Simerka's counsel. Moreover, on January 7, 2003, respondent authorized opposing counsel to sign a notice of dismissal for him, again representing that he was still Simerka's counsel.

{¶ 33} The board found that in failing to properly represent Simerka, respondent violated DR 1–102(A)(4), 1–102(A)(5), 3–101(B), and 7–102(A)(5) (prohibiting a lawyer from knowingly making a false statement of law or fact), and Gov.Bar R. V(8)(E).

## Count XII—Uchitel

{¶ 34} In September 2001, Robert Uchitel retained respondent to defend him against possible charges that he had violated probation. Uchitel paid respondent $4,500.

{¶ 35} As part of his client's defense, respondent arranged for Uchitel to be administered a polygraph test by a private company. The test produced a report showing results favorable to Uchitel. Respondent received this report but never used it for his client's benefit.

{¶ 36} Sometime later, Uchitel's probation officer reported to the common pleas court that Uchitel was in violation of his probation, and the court scheduled a hearing. Respondent failed to attend. At a rescheduled hearing in March 2002, the court found that Uchitel had violated his probation and ordered Uchitel back to prison for nine months.

{¶ 37} In February 2005, respondent finally wrote to Uchitel, advising him of his suspended license and offering to refund $1,000 of Uchitel's money. As of the panel hearing, respondent had paid his client nothing.

{¶ 38} The board found that in failing to properly represent Uchitel, respondent had violated DR 9–102(A), and 9–102(B)(4), and Gov.Bar R. V(8)(E).

### Count XIV—Magrum

{¶ 39} In June 2002, Scott Magrum retained respondent to defend him against criminal charges filed in Sandusky County. Magrum paid respondent $1,500. A hearing was held in Magrum's case on July 3, 2002, the day respondent's suspension took effect. Respondent went to the hearing and told Magrum of his suspension but did nothing to assure that his client was otherwise adequately represented. Fortunately, the prosecution asked at the hearing for dismissal of the criminal charges.

{¶ 40} On September 26, 2005, respondent wrote to Magrum and offered to return $700 of his fee. As of the panel hearing date, respondent had refunded nothing.

{¶ 41} The board found that in failing to properly represent Magrum, respondent had violated DR 2–110(A)(3), 9–102(A), and 9–102(B)(4), and Gov.Bar R. V(8)(E).

### Count XV—Thomas

{¶ 42} On February 17, 2005, respondent executed a general power of attorney that authorized him to act on behalf of Kamita Thomas, providing that he did not perform acts constituting the practice of law. Despite his July 2002 suspension from practice, respondent prepared a Chapter 13 bankruptcy petition for Thomas. He selected the form of debt relief that he considered to be in her best interest, included various schedules and financial statements, and filed the petition for Thomas on February 22, 2005. On March 4, 2005, respondent filed other supporting documents that he had prepared for the Thomas bankruptcy proceeding. Respondent did not charge Thomas for his services.

{¶ 43} On March 8, 2005, the bankruptcy judge held a hearing requiring respondent to appear and show cause. The court confronted respondent about the fact of his suspension and the actions that he had taken on Thomas's behalf. Respondent conceded that he had advised Thomas as to which form of bankrupt-

cy she should file, prepared the necessary papers, and filed them in court, acts that the bankruptcy judge found to be the practice or law. At the conclusion of the hearing, the bankruptcy court dismissed Thomas's bankruptcy petition.

{¶ 44} The board found that in representing Thomas following the suspension of his license to practice, respondent had violated DR 1–102(A)(6) and 3–101(B).

## Recommended Sanction

{¶ 45} Having found that respondent violated the foregoing duties to the public, the legal profession, his clients, and the legal system, the panel and board considered the mitigating and aggravating factors of respondent's case before recommending a sanction. See Section 10 of the Rules and Regulations Governing Procedure on Complaints and Hearings Before the Board of Commissioners on Grievances and Discipline ("BCGD Proc.Reg."). Respondent submitted as a mitigating factor that he suffered from a mental disability as defined by BCGD Proc.Reg. 10(B)(2)(g).

{¶ 46} Respondent was diagnosed with "adjustment disorder with mixed anxiety and depressed mood" around the time that he entered into a contract with the Ohio Lawyers Assistance Program to help him cope with his symptoms. According to his psychologist, respondent's symptoms began after the previous charges of professional misconduct were filed against him, and treatment ended in early 2005. The psychologist further reported that respondent's anxiety and depressed mood did not contribute to or cause the misconduct at issue in this case. Because BCGD Proc.Reg. 10(B)(2)(g)(ii) requires this causal connection, the board did not attribute mitigating effect to respondent's condition.

{¶ 47} As to other mitigation, the board observed that respondent had expressed sincere regret for his wrongdoing and the harm he caused his clients. He testified that at the time of his prior suspension, he had undertaken too many cases, had tried to do too many things for too many people, and was overwhelmed by his practice.

{¶ 48} The aggravating factors of respondent's case, however, far outweighed the evidence of mitigating factors. The board found that respondent has a significant history of professional misconduct; committed multiple offenses with a discernible pattern; failed to cooperate in the disciplinary process, including failing to reimburse the Client Security Fund for claims paid for his misconduct; inordinately delayed the disciplinary proceedings; and inflicted serious harm on numerous clients. See BGCD Proc.Reg. 10(B)(1)(a), (c), (d), (e), and (h). In addition, respondent did not comply with the additional continuing legal education requirements imposed by Gov.Bar R. X(3)(G) on attorneys suspended from practice for a definite or indefinite period. Respondent also made little or no restitution to most of the affected clients. BCGD Proc.Reg. 10(B)(1)(i). Finally,

the board found that respondent had knowingly engaged in the practice of law while his license was under suspension.

{¶ 49} Relator advocated respondent's permanent disbarment. Respondent asked that he receive another indefinite suspension.

{¶ 50} Adopting the panel's report, the board recommended respondent's permanent disbarment. Respondent, who is no longer represented by counsel, objects to the board's recommendation.

## Review

{¶ 51} Respondent does not contest that he violated the foregoing Disciplinary Rules and Rules for the Government of the Bar. He instead urges us to impose a second indefinite suspension of his license, citing his mental disability as a mitigating factor and his promise to reform. Neither consideration warrants lenience. We thus adopt the board's 84 findings of misconduct and also hold that permanent disbarment is the appropriate sanction.

{¶ 52} BCGD Proc.Reg. 10(B)(2)(g)(ii) affords mitigating effect when a mental disability has contributed to cause professional misconduct. The mitigating effect emanates from the fact that the disability diminished the lawyer's capacity to adhere to ethical standards. Here, however, respondent's psychologist reported that respondent had no such incapacity when he engaged in misconduct—his depressed mood developed after his misconduct because he faced the prospect of disciplinary censure. This natural reaction does nothing to relieve respondent's culpability and, therefore, is not mitigating. Accord *Disciplinary Counsel v. Allison,* 98 Ohio St.3d 322, 2003-Ohio-776, 784 N.E.2d 695, ¶ 12 (absent evidence that depression contributed to cause misconduct, treatment for depression is insufficient to warrant a lesser sanction than disbarment).

{¶ 53} Moreover, we take nothing from respondent's assurances that he has learned from his mistakes and will do better if given another chance. Respondent has routinely taken clients' money and done little if any work in return, even continuing to mislead clients while disciplinary proceedings were pending against him. Respondent has not produced records to account for any services that he did provide these clients, which may mean that he misappropriated as much as $36,000. Respondent has also repeatedly failed to make promised restitution, and he refused to comply with our order suspending his license. Finally, respondent's misconduct involved most of the aggravating factors specified in BCGD Proc.Reg. 10(B)(1), and he did not credibly establish one mitigating factor in his defense.

{¶ 54} As relator argues, "[t]he normal penalty for continuing to practice law while under suspension is disbarment." *Disciplinary Counsel v. Mbakpuo,* 98 Ohio St.3d 177, 2002-Ohio-7087, 781 N.E.2d 208, ¶ 13; *Disciplinary Counsel v.*

*Allison,* 98 Ohio St.3d 322, 2003-Ohio-776, 784 N.E.2d 695, ¶ 12. Moreover, accepting legal fees and then failing to carry out the contract for employment is tantamount to theft of client funds and is also cause for disbarment, particularly when coupled with neglect, a history of misconduct, and other disciplinary infractions. *Columbus Bar Assn. v. Moushey,* 104 Ohio St.3d 427, 2004-Ohio-6897, 819 N.E.2d 1112, ¶ 16. The absence of any circumstances to militate against disbarment further supports disbarment in this case.

{¶ 55} Respondent is therefore permanently disbarred from the practice of law in Ohio. Costs are taxed to respondent.

Judgment accordingly.

MOYER, C.J., RESNICK, PFEIFER, LUNDBERG STRATTON, O'CONNOR, O'DONNELL and LANZINGER, JJ., concur.

———————

Jonathan E. Coughlan, Disciplinary Counsel, and Brian E. Shinn, Assistant Disciplinary Counsel, for relator.

Arthur Ray Frazier, pro se.