[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *Disciplinary Counsel v. Sarver*, Slip Opinion No. 2020-Ohio-5478.]

NOTICE

This slip opinion is subject to formal revision before it is published in an advance sheet of the Ohio Official Reports. Readers are requested to promptly notify the Reporter of Decisions, Supreme Court of Ohio, 65 South Front Street, Columbus, Ohio 43215, of any typographical or other formal errors in the opinion, in order that corrections may be made before the opinion is published.

SLIP OPINION NO. 2020-OHIO-5478

DISCIPLINARY COUNSEL *v*. SARVER.

[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *Disciplinary Counsel v. Sarver*, Slip Opinion No. 2020-Ohio-5478.]

*Attorneys—Misconduct—Violations of the Rules of Professional Conduct— Prof.Cond.R. 3.4(c)'s prohibition against a lawyer's knowing disobedience of an obligation under a tribunal's rules applies to a lawyer's conduct that occurs after a tribunal has issued a final order as well as to a lawyer's conduct that occurs before or during litigation—Permanent disbarment.*

(No. 2020-0229—Submitted June 3, 2020—Decided December 2, 2020.)

ON CERTIFIED REPORT by the Board of Professional Conduct of the Supreme Court, No. 2019-025.

_____

FISCHER, J.

{¶ 1} Respondent, Jason Allan Sarver, of Columbus, Ohio, Attorney Registration No. 0082073, was admitted to the practice of law in Ohio in 2007. On November 28, 2018, we suspended him from the practice of law for two years, with

18 months conditionally stayed, for engaging in a sexual relationship with an indigent client, lying about that relationship to the judge who was presiding over the client's criminal case, and engaging in illegal activity by advising the client to turn off her phone's GPS while there was an outstanding warrant for her arrest. *Disciplinary Counsel v. Sarver*, 155 Ohio St.3d 100, 2018-Ohio-4717, 119 N.E.3d 405 ("*Sarver I*").

{¶ 2} In a June 3, 2019 complaint, relator, disciplinary counsel, charged Sarver with filing a false affidavit of compliance with this court, continuing to practice law while under suspension, and committing other professional misconduct during the course of his suspension and the ensuing disciplinary investigation.

{¶ 3} The parties entered into comprehensive stipulations of fact and misconduct, in which Sarver admitted that he committed all but one of the alleged rule violations. After a hearing, the board issued a report finding that Sarver committed all the charged misconduct and recommending that he be permanently disbarred. Sarver objects to the board's finding that he violated either of two rules by failing to notify a client of his suspension—though he had stipulated to one of those violations. He also disputes the board's finding that he presented no mitigating evidence and argues that an indefinite suspension is the appropriate sanction for his misconduct.

{¶ 4} For the reasons that follow, we adopt the board's findings of misconduct and its recommended sanction of permanent disbarment and we order Sarver to pay $50,000 in restitution.

**FACTS AND MISCONDUCT**

*Sarver is retained for wrongful-death suit in June 2018*

{¶ 5} Jessica Mustin was killed on June 23, 2018, when her vehicle collided with a vehicle traveling in the wrong direction on a highway in Cleveland. At the time of her death, Jessica had a four-year-old son and was in a relationship with

Anthony Hodge. Hodge referred Jessica's mother, Juanita Mustin, to Sarver to pursue a wrongful-death claim.

{¶ 6} On June 30, 2018, Juanita Mustin signed a contingent-fee agreement in which she agreed to pay Sarver 33 percent of any settlement obtained without filing a lawsuit. Sarver later agreed to help Mustin pursue a claim with the Ohio Victims of Crime Compensation Program ("OVCCP"). For the first five and a half months of Sarver's representation, he communicated with Mustin only by telephone or through Hodge.

*Sarver negotiates a settlement with Allstate Insurance Company and files a document in the probate court*

{¶ 7} Sarver notified the other driver's insurer, Allstate Insurance Company, that he was representing Jessica's estate, and on August 21, 2018, Allstate offered to settle the estate's claim for its policy limit of $50,000. Sarver informed Mustin of the offer and told her that all proceeds of the settlement, less his attorney fees and costs, would be held in trust for Jessica's minor son. He advised Mustin that he would need to complete some paperwork for the probate court before any of the proceeds could be distributed.

{¶ 8} On September 6, 2018, Sarver accepted Allstate's settlement offer on Mustin's behalf. He also prepared, and obtained Mustin's signature on, various probate documents, including an application for authority to administer the estate and an application to approve the settlement and distribution of wrongful-death and survival claims. He took those documents to the Cuyahoga County Probate Court on October 15, 2018, but filed only the application for authority to administer the estate.

{¶ 9} Throughout relator's investigation and this disciplinary proceeding, Sarver has claimed that he did not file the other documents because a magistrate either told him or led him to believe that he could streamline the probate-court proceedings by disbursing some of the settlement proceeds to family members at

the direction of the fiduciary to reduce the distribution to Jessica's son to less than $25,000. The magistrate did not recall having spoken with Sarver, and she submitted an affidavit in this disciplinary proceeding that contradicted Sarver's claim. She averred that she had never advised any attorney or layperson to distribute the proceeds of a personal-injury or wrongful-death case either without the probate court's approval or pursuant to the administrator's directives or so as to attempt to reduce the funds due to a minor child to less than $25,000. Sarver testified that he did not believe that the magistrate's affidavit was false or incorrect. Therefore, the board determined that Sarver's statements about the magistrate's advice were false and that the real reason he had elected not to file the other probate documents was that they could not be filed until Mustin was appointed as the fiduciary.

*Sarver is suspended from the practice of law but continues to represent Mustin and the estate*

{¶ 10} On November 26, 2018, Sarver posted a $10,000 bond on Mustin's behalf. That same day, the court appointed Mustin as the fiduciary of Jessica's estate and issued her letters of authority. On November 28, 2018, this court suspended Sarver from the practice of law for two years with 18 months conditionally stayed.

{¶ 11} In December 2018, Sarver filed in this court an affidavit of compliance stating that he had complied with our suspension order and that he had notified his clients and the courts in which he had pending cases of his suspension. He has now stipulated that contrary to his affidavit of compliance, he had not notified Mustin, the probate court, Allstate, or the OVCCP of his suspension.

{¶ 12} Despite his suspension, Sarver continued to represent Mustin. Just two days after he was suspended, he wrote a letter to the OVCCP on his law-office letterhead, which identified him as an attorney. He closed the letter, "We look forward to working with you on this claim." That same day, he signed Mustin's

4

name to a settlement release, falsely notarized that signature, and sent the document to Allstate.

{¶ 13} On December 10, 2018, Sarver received the settlement check, signed Mustin's name to it, and deposited it into his client trust account. After depositing the settlement check into his client trust account, Sarver began to distribute the settlement proceeds without the probate court's approval. He immediately began paying personal financial obligations directly from his client trust account with what he had calculated to be his earned fee.

{¶ 14} At his disciplinary hearing, Sarver testified that Mustin had verbally authorized him to sign the settlement release and check on her behalf. But the board found that he had attempted to duplicate Mustin's signature and that that effort would have been unnecessary if he had permission to sign the document and check on her behalf. And Mustin's testimony was clear: she never gave Sarver permission to sign her name on the document or the check.

{¶ 15} In mid-December 2018, Sarver met Mustin for the first time at her home and, contrary to the application to approve the settlement and distribution of the wrongful-death proceeds that she had previously signed, gave her a check for $4,734. He suggested that they make a $2,500 distribution to Hodge, and he later issued a $2,000 check to Earth Temple, a 501(c)(3) corporation registered to Hodge, *see* 26 U.S.C. 501(c)(3). Although Sarver claimed that he and Mustin had mutually agreed to make those distributions, Mustin testified that she never asked Sarver for money because she knew that the settlement proceeds would go to her grandson. She said that Sarver told her that her check was "an early Christmas present" and that he was giving it to her for tax reasons. Mustin also testified that she went along with Sarver's suggestion that because Hodge was dating Jessica at the time of her death, he should get a portion of the settlement proceeds.

*Mustin becomes aware of Sarver's suspension from the practice of law*

{¶ 16} On February 5, 2019, an OVCCP representative called Mustin to discuss her case and informed her that he could no longer work with Sarver because Sarver's law license had been suspended. That was the first time that Mustin heard of Sarver's suspension—more than two months after his suspension and more than one month after he avowed to this court that he had indeed informed Mustin of his suspension. When she called Sarver to ask about his suspension, he admitted that his license had been suspended but further stated that it would be reinstated in a couple of months. He did not advise her to consult with other counsel, nor did he return her file to her.

*Sarver stipulates to some violations of the Rules of Professional Conduct*

{¶ 17} The parties stipulated and the board found that Sarver's conduct violated Prof.Cond.R. 1.16(d) (requiring a lawyer to promptly deliver client papers and property as part of the termination of representation), 5.5(a) (prohibiting a lawyer from practicing law in a jurisdiction in violation of the regulation of the legal profession in that jurisdiction), 8.1(a) (prohibiting a lawyer from knowingly making a false statement of material fact in connection with a disciplinary matter), 8.4(c) (prohibiting a lawyer from engaging in conduct involving dishonesty, fraud, deceit, or misrepresentation), and 8.4(d) (prohibiting a lawyer from engaging in conduct that is prejudicial to the administration of justice).

{¶ 18} Sarver also stipulated that he violated Prof.Cond.R. 3.4(c) (prohibiting a lawyer from knowingly disobeying an obligation under the rules of a tribunal) by failing to notify Mustin of his suspension and by paying himself attorney fees without first obtaining the probate court's approval, in violation of Loc.R. 71.1 of the Cuyahoga County Probate Court. However, he contested an alleged violation of Prof.Cond.R. 1.4(a)(1) (requiring a lawyer to inform a client of any decision or circumstance with respect to which the client's informed consent is required), arguing that the charge was duplicative of the stipulated Prof.Cond.R.

3.4(c) violation in that both allegations arose from his failure to inform Mustin of his November 2018 suspension. Sarver argued that Mustin's informed consent was not necessary to terminate his representation following his suspension. The board found that Sarver had a duty to comply with this court's suspension order under Prof.Cond.R. 3.4(c) and a separate duty to keep Mustin reasonably informed about the status of her case under Prof.Cond.R. 1.4(a). Specifically, the board determined that the decision on how to proceed in the face of Sarver's suspension required Mustin's informed consent and that that choice should have been between obtaining new counsel and delaying the insurance settlement and administration of the probate estate until Sarver's license was reinstated. Consequently, the board found that Sarver violated both Prof.Cond.R. 3.4(c) and 1.4(a)(1).

## SARVER'S FIRST AND SECOND OBJECTIONS

*First objection: Violation of Prof.Cond.R. 1.4(a)(1)*

{¶ 19} In support of his first objection, Sarver asserts that his representation of Mustin terminated automatically upon his suspension. Therefore, he contends, he could not have violated Prof.Cond.R. 1.4(a)(1) by failing to notify Mustin of that suspension, because her informed consent was not necessary to terminate the representation and the decision regarding how to move forward was Mustin's alone.

{¶ 20} Sarver's suspension was effective the moment our order was filed with the clerk. *See* S.Ct.Prac.R. 18.01. That order required him to "immediately cease and desist from the practice of law in any form," divested him of "all of the rights, privileges, and prerogatives customarily accorded to a member in good standing of the legal profession of Ohio," and effectively disqualified him from acting as an attorney in any respect. It did not automatically terminate his relationship with Mustin, however, as our order specifically required him to notify all his clients of his suspension.

{¶ 21} Had Sarver timely notified Mustin of his suspension as required by Gov.Bar R. V(22) and our suspension order, the decision to proceed with new

counsel or wait for him to be reinstated would have been Mustin's alone. Notwithstanding that order, Sarver failed to notify Mustin of his suspension and continued to represent her, signed her name to the settlement release and check, negotiated the check, and distributed a portion of the settlement proceeds without obtaining the required probate-court approval. Those actions placed Mustin in jeopardy of violating her fiduciary duties to the estate and therefore required her informed consent. We therefore overrule Sarver's first objection to the board's findings of misconduct and find that his failure to notify Mustin of his suspension and to obtain her informed consent to proceed with the representation violated Prof.Cond.R. 1.4(a)(1).

*Second objection: Violation of Prof.Cond.R. 3.4(c)*

{¶ 22} Sarver objects to the board's finding that he violated Prof.Cond.R. 3.4(c), contending that the title of Prof.Cond.R. 3.4 ("Fairness to opposing party and counsel"), the content of the rule, and the official comments accompanying the rule show that the scope of the rule is limited to a lawyer's conduct toward an opposing party or opposing counsel during the course of litigation. Because Sarver's failure to comply with this court's suspension order occurred *after* his first disciplinary action was complete, he contends, his failure to comply with this court's suspension order cannot constitute a violation of Prof.Cond.R. 3.4(c). These arguments are without merit.

{¶ 23} The plain language of Prof.Cond.R. 3.4(c) states that a lawyer shall not "knowingly disobey an obligation under the rules of a tribunal, except for an open refusal based on a good faith assertion that no valid obligation exists." Prof.Cond.R. 3.4(c) contains no express temporal limitation on the prohibition against knowingly disobeying an obligation under the rules of a tribunal. *Compare with* Prof.Cond.R. 3.4(d) (providing that a lawyer shall not "*in pretrial procedure* intentionally or habitually make a frivolous motion or discovery request" [emphasis added]) *and* Prof.Cond.R. 3.4(e) (providing that a lawyer shall not "*in trial*, allude

8

to any matter that the lawyer does not reasonably believe is relevant" [emphasis added]).  In addition, the preamble to the Rules of Professional Conduct provides that the comments accompanying a rule explain and illustrate the meaning and purpose of the rule and that they are "intended as guides to interpretation" but that "the text of each rule is authoritative."  Prof.Cond.R., Preamble [21].

{¶ 24} Moreover, we have held that the title of a chapter of the Rules of Professional Conduct does not limit the scope of the rules contained therein.  *See Disciplinary Counsel v. Robinson*, 126 Ohio St.3d 371, 2010-Ohio-3829, 933 N.E.2d 1095, ¶ 23-30 (rejecting attorney's argument that the title "Advocate" limited the application of the third chapter of the Rules of Professional Conduct to conduct occurring in an attorney's professional role as an advocate and holding that the rules in that chapter apply with equal force to attorneys acting in personal or professional capacity).  We have routinely applied the prohibitions set forth in Prof.Cond.R. 3.4(a)—which, like Prof.Cond.R. 3.4(c), lacks an express temporal limitation—to attorneys' personal conduct that has occurred in the absence of ongoing litigation.  *See, e.g.*, *Cleveland Metro. Bar Assn. v. Azman*, 147 Ohio St.3d 379, 2016-Ohio-3393, 66 N.E.3d 695; *Columbus Bar Assn. v. Okuley*, 154 Ohio St.3d 124, 2018-Ohio-3857, 111 N.E.3d 1173.

{¶ 25} On this authority, we conclude that the prohibition against a lawyer's knowing disobedience of an obligation under the rules of a tribunal contained in Prof.Cond.R. 3.4(c) applies to a lawyer's conduct that occurs after a tribunal has issued a final order as well as to a lawyer's conduct that occurs before or during litigation.  We therefore overrule Sarver's second objection.

**ADOPTION OF THE BOARD'S FINDINGS OF MISCONDUCT**

{¶ 26} After independently reviewing the record and overruling Sarver's first two objections, we adopt the board's findings that Sarver's conduct violated Prof.Cond.R. 1.4(a)(1), 1.16(d), 3.4(c), 5.5(a), 8.1(a), 8.4(c), and 8.4(d).

**RECOMMENDED SANCTION**

**{¶ 27}** "The primary purpose of the disciplinary process is to protect the public from lawyers who are unworthy of the trust and confidence essential to the attorney-client relationship and to allow us to ascertain the lawyer's fitness to practice law." *Disciplinary Counsel v. Sabroff*, 123 Ohio St.3d 182, 2009-Ohio-4205, 915 N.E.2d 307, ¶ 20.  In determining the appropriate sanction for attorney misconduct—a sanction designed to protect the public—we consider all relevant factors, including the ethical duties violated, the aggravating and mitigating factors listed in Gov.Bar R. V(13), and the sanctions imposed in similar cases.  *See Dayton Bar Assn. v. Sullivan*, 158 Ohio St.3d 423, 2020-Ohio-124, 144 N.E.3d 401, ¶ 28.

**{¶ 28}** "We have recognized that the presumptive sanction for continuing to practice law while under suspension is disbarment."  *Disciplinary Counsel v. Hoskins*, 150 Ohio St.3d 41, 2017-Ohio-2924, 78 N.E.3d 845, ¶ 27, citing *Disciplinary Counsel v. Fletcher*, 135 Ohio St.3d 404, 2013-Ohio-1510, 987 N.E.2d 678, ¶ 10; *Sabroff* at ¶ 21; *Disciplinary Counsel v. Frazier*, 110 Ohio St.3d 288, 2006-Ohio-4481, 853 N.E.2d 295, ¶ 54; and *Disciplinary Counsel v. Allison*, 98 Ohio St.3d 322, 2003-Ohio-776, 784 N.E.2d 695, ¶ 12.  This is especially true when there are no mitigating circumstances.  *See Cincinnati Bar Assn. v. Rothermel*, 112 Ohio St.3d 443, 2007-Ohio-258, 860 N.E.2d 754, ¶ 14.

**{¶ 29}** The parties stipulated that four aggravating factors are present in this case: (1) Sarver's prior discipline, *see* Gov.Bar R. V(13)(B)(1); (2) a dishonest or selfish motive, *see* Gov.Bar R. V(13)(B)(2); (3) multiple violations of the Rules of Professional Conduct, *see* Gov.Bar R. V(13)(B)(4); and (4) the harm he caused to Juanita Mustin, *see* Gov.Bar R. V(13)(B)(8).  The board adopted these factors and observed that Sarver had engaged in a pattern of lies that spanned both of his disciplinary cases—including lying at various times throughout this disciplinary proceeding about the advice he had received from the magistrate—though it did not expressly attribute aggravating effect to that determination.  *See* Gov.Bar R.

V(13)(B)(3) and (6). The board did, however, attribute aggravating effect to Sarver's lack of candor and his failure to acknowledge his wrongdoing in this case. *See* Gov.Bar R. V(13)(B)(7). The parties did not stipulate to any mitigating factors, and the board found none. *See* Gov.Bar R. V(13)(C).

{¶ 30} In their posthearing briefs, the parties suggested that the appropriate sanction for Sarver's misconduct is an indefinite suspension, and relator proposed that conditions, including the payment of restitution to Jessica's estate or to Allstate, be placed on Sarver's reinstatement to the practice of law. The board considered two lines of precedent involving attorneys who continued to practice law and engaged in additional misconduct while under suspension—one line in which we imposed indefinite suspensions and one in which we permanently disbarred the attorneys—and it recommends that Sarver be permanently disbarred for his misconduct. This court is the ultimate arbiter of attorney discipline, and though we do not need to adopt the board's sanction recommendations, *see Cincinnati Bar Assn. v. Powers*, 119 Ohio St.3d 473, 2008-Ohio-4785, 895 N.E.2d 172, ¶ 21, we agree with the board that permanent disbarment is necessary in this case to adequately protect the public.

### SARVER'S THIRD AND FOURTH OBJECTIONS

*Third objection: Mitigating evidence*

{¶ 31} Sarver objects to the board's finding that he presented no mitigating evidence. Specifically, he asserts that he attempted to make restitution of $43,266 (the full amount of the settlement, less the funds he had disbursed to Mustin and Hodge) to Jessica Mustin's estate, but that the payment was rejected and returned to him by Juanita Mustin's new counsel. In his response to Sarver's objection, relator notes that Sarver waited until only a week before his disciplinary hearing and attempted to make only partial restitution of the $50,000 that the estate was entitled to receive. Moreover, we note that Mustin's counsel rejected Sarver's restitution offer because, once Allstate was informed that the settlement agreement

had never been approved by the probate court, Allstate agreed to reoffer its $50,000 liability limit in exchange for a full release.

{¶ 32} We have repeatedly attributed little or no mitigating effect to restitution that was not timely made. *See, e.g.*, *Cleveland Metro. Bar Assn. v. Dixon*, 95 Ohio St.3d 490, 2002-Ohio-2490, 769 N.E.2d 816, ¶ 20-21 (affording little mitigating effect to restitution paid as part of negotiated settlement of litigation commenced against attorney more than one year after she became aware of grievance against her); *Disciplinary Counsel v. Williams*, 145 Ohio St.3d 308, 2016-Ohio-827, 49 N.E.3d 289, ¶ 16 (attributing no mitigating effect to attorney's attempt to make partial restitution just one day before his disciplinary hearing). Sarver's belated and unsuccessful effort to make partial restitution to Jessica's estate can only be described as a "Hail Mary" to attempt to lay the groundwork for at least one mitigating factor for his disciplinary case. Rather, because his restitution attempt was so insincere, we instead conclude that the aggravating factor of failure to make restitution, *see* Gov.Bar R. V(13)(B)(9), exists in this case—especially given that Jessica's child has been deprived of the time-value of the money in the estate entirely due to Sarver's misconduct. We therefore overrule Sarver's objection and attribute no mitigating effect to his "effort" to make partial restitution to Jessica's estate.

*Fourth objection: Appropriate sanction*

{¶ 33} In his final objection, Sarver contends that an indefinite suspension—not permanent disbarment—is the appropriate sanction for his misconduct. Relator, finding it to be a close call, stands by that recommendation. But relator also acknowledges that because Sarver's misconduct occurred while he was suspended from the practice of law, permanent disbarment is not unwarranted.

{¶ 34} Based on Sarver's prior discipline, his dishonest and selfish motive, his multiple new violations of the Rules of Professional Conduct, the harm caused

to Mustin, and this court's precedent, we hold that permanent disbarment is the appropriate sanction in this case.

### Sarver's disciplinary history is egregious

{¶ 35} The recency and severity of Sarver's disciplinary history cannot be overlooked. In November 2018, this court suspended Sarver from the practice of law for two years, with 18 months stayed on conditions, for "engaging in a sexual relationship with a[n indigent] client in a criminal case—during which he also obstructed official business, committed trespass, and lied about the relationship to a judge," *Sarver I*, 155 Ohio St.3d 100, 2018-Ohio-4717, 119 N.E.3d 405, at ¶ 31. The facts of that case, as described in the majority opinion, were as follows:

> Sarver and J.B. met each other in 2012 when Sarver represented J.B.'s then boyfriend in a legal matter. On September 11, 2015, J.B. reached out to Sarver when she needed "a good attorney for felony ......some stupid shit happened and I really need to talk to u its not good." The next day, Sarver and J.B. met at a Columbus restaurant, discussed J.B.'s criminal case over drinks, and then had sex in Sarver's vehicle in the parking lot.
>
> J.B. was charged with theft in the Hocking County Municipal Court and a warrant was issued for her arrest. * * * [Sarver] subsequently instructed her to turn off the Global Positioning System ("GPS") on her mobile phone so that law enforcement could not track her. Several days later, a grand jury indicted J.B. for multiple felonies, and due to Sarver's advice to turn off the GPS on her mobile phone, she avoided arrest for almost one month before being apprehended.
>
> The judge presiding over J.B.'s arraignment appointed Sarver to represent her, and Sarver, now representing an indigent

client as court-appointed counsel, engaged in sexual activity with her at least seven more times over the next four months. They also trespassed onto Sarver's neighbor's property to use a hot tub.

* * * [A]lthough rumors of his sexual relationship with J.B. soon spread, Sarver falsely denied the rumors to the judge presiding over J.B.'s criminal case on two separate occasions. * * * Detectives interviewed J.B. * * *, and during her interview * * *, she stated that Sarver had "insinuated" that he would help J.B. with her "warrants and cases for sexual favors." She told the detectives that she had "problems saying no to something like that * * *. You feel kinda forced into it. * * * And, you know, of course, I had something over my head, I was facing 7 felonies."

* * * Sarver pleaded guilty to three misdemeanor counts of criminal trespassing (based on Sarver's unauthorized use of his neighbor's hot tub) and one misdemeanor count of obstructing official business (based on his advice to J.B. to turn off her phone's GPS while there was an outstanding warrant for her arrest). * * *

* * *

* * * The board * * * found that Sarver's conduct violated Prof.Cond.R. 1.8(j) (prohibiting a lawyer from soliciting or engaging in sexual activity with a client unless a consensual sexual relationship between them existed prior to the client-lawyer relationship), 8.4(b) (prohibiting a lawyer from committing an illegal act that adversely reflects on the lawyer's honesty or trustworthiness), 8.4(c) (prohibiting a lawyer from engaging in conduct involving dishonesty, fraud, deceit, or misrepresentation), and 8.4(d) (prohibiting a lawyer from engaging in conduct that is prejudicial to the administration of justice).

(Ellipses in internal quotations sic.) *Id.* at ¶ 4-10.

{¶ 36} In reviewing the board's findings, this court emphasized the severity of Sarver's misconduct, acknowledging that the " '[m]ost disturbing' " cases are those " 'in which a lawyer has had sex with a client while defending the client against criminal charges * * * or has accepted sex in lieu of fees.' " (Ellipsis sic.) *Id.* at ¶ 17, quoting *Disciplinary Counsel v. Krieger*, 108 Ohio St.3d 319, 2006-Ohio-1062, 843 N.E.2d 765, ¶ 29. And as the court noted, "[t]he abuse of the attorney-client relationship not only harms the dignity of the client, whose body and trust in her lawyer have been violated, but it also impugns the legal system as a whole." *Sarver I* at ¶ 29. Thus, for his violations of the Rules of Professional Conduct, the court suspended Sarver from the practice of law for two years, with 18 months conditionally stayed. *Id.* at ¶ 32.

{¶ 37} Sarver had engaged in a pattern of misconduct and committed some of the most egregious and disturbing violations of attorney misconduct, short of a violent felony offense—violating and abusing the attorney-client relationship and deceiving members of the judiciary. This court issued a sanction that would protect the public but would give Sarver the opportunity to be reinstated to the practice of law with the shortest suspension that could be imposed under the circumstances. However, despite this sanction, Sarver immediately proceeded to violate the Rules of Professional Conduct by lying to this court and his client.

**Sarver's dishonest and selfish motivations led to more violations of the Rules of Professional Conduct**

{¶ 38} Despite this court's efforts to prevent Sarver from committing future transgressions, Sarver continued his pattern of deceit, manipulation, and selfishness to harm yet another client. Within the first few days of his original suspension and continuing through the remainder of 2018 and well into 2019, Sarver violated seven professional-conduct rules in relation to his "representation" of Juanita Mustin and

15

of Jessica's estate: Prof.Cond.R. 1.4(a)(1), 1.16(d), 3.4(c), 5.5(a), 8.1(a), 8.4(c), and 8.4(d). The violations spanned across four chapters of the Rules of Professional Conduct and occurred at various times throughout Sarver's interactions with Mustin. This was not a single transaction or instance—this was a pattern of deceit and misrepresentation involving a grieving and vulnerable mother.

{¶ 39} After being suspended on November 28, 2018, Sarver did not inform any of the relevant parties of his suspension. Sarver lied by omission in continuing to represent Mustin and the estate. He then expressly lied to this court by filing an affidavit of his compliance with our suspension order, fully knowing that he had not notified any relevant party of his suspension.

{¶ 40} Then, building on his lies, Sarver forged his client's name to the $50,000 settlement check issued by Allstate and began using what he believed to be his "earned fees" to pay personal financial obligations. Sarver then disbursed funds to individuals with absolutely no entitlement to those funds to reduce the amount of the estate so as to avoid certain proceedings in probate court. Sarver did this without the probate court's authority to expend any of the settlement funds *and* while under suspension from this court.

{¶ 41} Making matters worse, Sarver attempted to justify his actions to relator by falsely accusing a magistrate—another lawyer and member of the judiciary—of advising him to reduce the amount of the estate at the direction of the fiduciary to avoid certain probate proceedings.

{¶ 42} Sarver then made a feeble attempt to remedy the situation seven days before his own disciplinary hearing by offering to make partial restitution in the amount of $43,266, the full amount of the settlement, less the funds he had disbursed to Mustin and Jessica's boyfriend.

{¶ 43} Sarver's actions are indicative of a selfish attorney who decided to "wait out" his suspension, so that he could secure and use settlement funds during his suspension, and then resume his representation after his suspension was over,

clearly thinking that no one would be the wiser. His misconduct, which includes practicing law while under suspension, warrants permanent disbarment.

**The sanctions imposed in similar cases support permanent disbarment**

{¶ 44} Sarver argues that the facts here are distinguishable from the facts of the cases on which the board relied to support its recommendation that he be permanently disbarred, and he maintains that the appropriate sanction for his misconduct is an indefinite suspension. Sarver argues that his case is similar to *Disciplinary Counsel v. Meyer*, 142 Ohio St.3d 448, 2015-Ohio-493, 32 N.E.3d 434, in which we imposed an indefinite suspension. Relator too believes that Sarver's misconduct most closely resembles the conduct at issue in *Meyer*. Relator therefore also maintains that indefinite suspension is likely the appropriate sanction.

{¶ 45} We have held that disbarment is the presumed sanction for an attorney who practices law while under suspension. *Hoskins*, 150 Ohio St.3d 41, 2017-Ohio-2924, 78 N.E.3d 845, at ¶ 27. But, we have clarified that an indefinite suspension is more appropriate for attorneys who continued to practice law after we had suspended their licenses for continuing-legal-education and registration violations as well as for those who continued to practice law during suspensions for less egregious forms of misconduct than the misconduct exposed here, *see Disciplinary Counsel v. Freeman*, 126 Ohio St.3d 389, 2010-Ohio-3824, 934 N.E.2d 328, ¶ 14.

{¶ 46} Sarver's prior two-year suspension, with 18 months conditionally stayed, is not as severe a sanction as the prior indefinite suspensions we had imposed in *Cleveland Metro. Bar Assn. v. Pryatel*, 145 Ohio St.3d 398, 2016-Ohio-865, 49 N.E.3d 1286; *Frazier*, 110 Ohio St.3d 288, 2006-Ohio-4481, 853 N.E.2d 295; and *Disciplinary Counsel v. Mbakpuo*, 98 Ohio St.3d 177, 2002-Ohio-7087, 781 N.E.2d 208—permanent-disbarment decisions on which the board relied. But Sarver's prior suspension was the consequence of egregious violations of our Rules

of Professional Conduct stemming from misconduct that reflected a dishonest, selfish motive and a complete lack of respect for the criminal justice system. Therefore, although Sarver's prior sanction is distinguishable from those we had imposed in *Pryatel*, *Frazier*, and *Mbakpuo*, the circumstances here do not support a deviation from the presumptive sanction of disbarment today.

{¶ 47} Sarver also argues that his case is distinguishable from *Disciplinary Counsel v. Bellew*, 152 Ohio St.3d 430, 2017-Ohio-9203, 97 N.E.3d 438, a case in which we imposed permanent disbarment. Sarver contends that because he "cooperated" with the disciplinary process, did not take on new clients while under suspension, and tried to make restitution, indefinite suspension is an appropriate sanction.

{¶ 48} In *Bellew*, we permanently disbarred an attorney who had abandoned multiple clients, failed to refund those clients their retainers, failed to cooperate in the disciplinary process, failed to answer five formal disciplinary complaints filed against him, and continued to practice law while under suspension. We agreed with the board's findings that Bellew had acted with a dishonest and selfish motive, had engaged in a pattern of misconduct that involved multiple offenses, and had taken advantage of vulnerable clients who needed legal assistance by taking their money and abandoning them. *Id.* at ¶ 13. In that case, there were no mitigating factors present. *Id.* We concluded that permanent disbarment was the only appropriate sanction. *Id.* at ¶ 15.

{¶ 49} While it is true that Sarver did stipulate to most of the charged rule violations, he also lied to this court about his compliance with the first disciplinary process, lied to relator about the magistrate's purported advice in handling the estate and about his lack of permission to sign a check on Mustin's behalf, and then proceeded to object to the finding of a violation to which he had stipulated in the course of the disciplinary proceedings. That is not cooperation.

18

{¶ 50} Although Sarver had begun representing Mustin before his suspension, Sarver failed to notify her of his suspension and continued to represent her and the estate. And Sarver's last-ditch effort at restitution was a self-serving "Hail Mary," thrown apparently in the hopes of benefiting himself during this disciplinary process. Sarver too manipulated a vulnerable client.

{¶ 51} So, while Sarver's misconduct may not be as extensive as the misconduct at issue in *Bellew*, his misconduct is certainly serious enough to warrant permanent disbarment to adequately protect the public.

{¶ 52} Sarver and relator encourage this court to consider this case in light of *Meyer*, 142 Ohio St.3d 448, 2015-Ohio-493, 32 N.E.3d 434. We agree that this case and *Meyer* are somewhat similar but only to the extent that the attorneys has previously received similar sanctions and practiced law while under suspension.

{¶ 53} Meyer was initially suspended for 61 days for violations of various profession-conduct rules in Kentucky, and we imposed a reciprocal-discipline order stating that she would not be reinstated to the practice of law in Ohio until she was reinstated in Kentucky. Approximately six months later, we found that she had continued to practice law in Ohio during her reciprocal suspension, made false and misleading statements to disciplinary counsel during her investigation, and failed to notify the Office of Attorney Services that she had changed her last name eight years earlier. For that misconduct, we suspended Meyer for an additional 18 months with 6 months conditionally stayed. We later imposed a separate interim suspension based on her failure to respond to a complaint alleging that she had violated our reciprocal-discipline order by failing to timely notify the courts and opposing counsel in two pending cases of her suspension and by participating in a case-management conference on behalf of a client while her license was under suspension.

{¶ 54} Meyer later admitted all the material facts and that she committed five of the six alleged rule violations—including a violation of Prof.Cond.R. 3.4(c)

for her failure to abide by this court's prior orders. We attributed aggravating effect to Meyer's prior disciplinary offenses, her selfish or dishonest motive, and her initial default in the disciplinary process, and we indefinitely suspended her from the practice of law for her misconduct. *Id.* at ¶ 11.

{¶ 55} We distinguish *Meyer* from the case at bar based on Sarver's pattern of lying, especially to this court. Although both Meyer and Sarver made false and misleading statements to disciplinary counsel during a disciplinary investigation, Sarver distributed estate funds without obtaining required court approval and Sarver lied not only to relator but also to this court—in a sworn affidavit—and to his client and other parties. We do not take this conduct lightly, for a lawyer's material misrepresentations to any court "strike[] at the very core of [the] lawyer's relationship with the court" and "[r]espect for our profession is diminished with every deceitful act of a lawyer." *Disciplinary Counsel v. Fowerbaugh*, 74 Ohio St.3d 187, 190, 658 N.E.2d 237 (1995). Sarver's propensity to lie not only to his clients but to the judiciary sets this case far apart from *Meyer*.

{¶ 56} Sarver's misconduct is much more like the misconduct committed by the respondent in *Disciplinary Counsel v. Shaw*, 138 Ohio St.3d 522, 2014-Ohio-1025, 8 N.E.3d 928, ¶ 13. The attorney in *Shaw* had been suspended from the practice of law for two years and had not sought reinstatement after that time, yet he continued to represent clients in two matters while under suspension, represented two new clients during the suspension, did not notify any of the clients of his suspension, paid himself attorney fees without the probate court's approval, acted with a dishonest and selfish motive, and did not pay restitution. Shaw presented one mitigating factor, which was that he had cooperated with the relator's investigation and the subsequent disciplinary proceedings, yet that was not enough to justify a departure from the presumption in favor of disbarment. *Id.* at ¶ 12-13.

{¶ 57} We acknowledge that Sarver did not represent numerous clients while under suspension, but his misconduct is similar to Shaw's. And we recognize

that in *Shaw*, there was a mitigating factor in the attorney's favor; in Sarver's case, there are none. As we have stated before, "[a]bsent any mitigating circumstances, the penalty for ignoring orders of the court and continuing to practice law while under suspension is disbarment." *Rothermel*, 112 Ohio St.3d 443, 2007-Ohio-258, 860 N.E.2d 754, at ¶ 14. *Shaw* supports permanent disbarment in this case. *See also Toledo Bar Assn. v. Hickman*, 119 Ohio St.3d 102, 2008-Ohio-3837, 892 N.E.2d 437 (permanently disbarring an attorney who practiced law while under suspension and committed similar misconduct of client neglect, improper retention of client funds, and lying to clients).

### Permanent disbarment is necessary to protect the public

{¶ 58} "[W]e have consistently recognized that the primary purpose of disciplinary sanctions is not to punish the offender, but to protect the public." *Disciplinary Counsel v. Edwards*, 134 Ohio St.3d 271, 2012-Ohio-5643, 981 N.E.2d 857, ¶ 19, citing *Disciplinary Counsel v. O'Neill*, 103 Ohio St.3d 204, 2004-Ohio-4704, 815 N.E.2d 286, ¶ 53. The aggravating circumstances and case law support a sanction of permanent disbarment in this case. That sanction is necessary to protect the public, because Sarver does not possess the requisite character and fitness to competently practice law in Ohio.

{¶ 59} Integrity is a necessary characteristic for an attorney practicing law in Ohio, and Sarver does not possess this qualification. Sarver lied to his client in this case. And then he lied to this court by filing a false sworn affidavit. And then he lied to relator. This is a pattern of misconduct continued from *Sarver I*, in which he lied to the trial court multiple times and likely to numerous other individuals. We can only assume that Sarver's "pants are charred" from the number of falsehoods that he has perpetuated throughout *Sarver I* and this case.

{¶ 60} We must protect the public from lawyers like Sarver who manipulate their clients, individuals to whom the lawyer owes a fiduciary relationship as well as ethical duties. In the oath for admission to the Ohio bar, attorneys swear or

affirm that they will abide by the Ohio Rules of Professional Conduct, will conduct themselves with dignity and civility, and will show respect towards judges, court staff, clients, fellow professionals, and all other persons. Gov.Bar R. I(9). Sarver has disregarded his oath to the bar and his duties to his clients. Here, Sarver manipulated a grieving mother while "representing" her in the resolution of her daughter's estate. He forged his client's signature, then distributed some of the funds to himself and others, all without proper authority and while under suspension. And in *Sarver I*, Sarver essentially exchanged his legal services for sexual favors from his indigent client in a criminal case. Like in the case at bar, he manipulated a vulnerable client in that case, too. Sarver has a pattern of breaching his clients' trust to pursue his own objectives—financial or otherwise—rather than act in the interest of his clients.

{¶ 61} Any sanction less severe than permanent disbarment in this case would be inadequate to protect the public. Sarver committed the misconduct in this case *immediately* following our disciplinary decision and during his suspension in *Sarver I*. Permanent disbarment coupled with the requirement that Sarver make full restitution of $50,000 to Allstate or the estate of Jessica Mustin[1] are necessary to adequately protect the public from future harm.

## CONCLUSION

{¶ 62} Accordingly, Jason Allan Sarver is permanently disbarred from the practice of law and ordered to make restitution of $50,000 to Allstate Insurance Company or the estate of Jessica Mustin. Costs are taxed to Sarver.

Judgment accordingly.

O'CONNOR, C.J., and FRENCH, DEWINE, DONNELLY, and STEWART, JJ., concur.

KENNEDY, J., concurs in judgment only.

---

1. The proper restitution payee will depend on whether the insurer has issued a second settlement check to the estate.

_____

Joseph M. Caligiuri, Disciplinary Counsel, and Karen H. Osmond and Donald M. Scheetz, Assistant Disciplinary Counsel, for relator.

Law Office of Philip A. King, L.L.C., and Philip A. King, for respondent.

_____