[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *Columbus Bar Assn. v. Okuley*, Slip Opinion No. 2021-Ohio-3225.]

NOTICE

This slip opinion is subject to formal revision before it is published in an advance sheet of the Ohio Official Reports. Readers are requested to promptly notify the Reporter of Decisions, Supreme Court of Ohio, 65 South Front Street, Columbus, Ohio 43215, of any typographical or other formal errors in the opinion, in order that corrections may be made before the opinion is published.

SLIP OPINION NO. 2021-OHIO-3225

COLUMBUS BAR ASSOCIATION *v*. OKULEY.

[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *Columbus Bar Assn. v. Okuley*, Slip Opinion No. 2021-Ohio-3225.]

*Attorneys—Misconduct—Violations of the Rules of Professional Conduct, including representing multiple clients with conflicting interests, continuing to practice law while license suspended, false communication regarding lawyer's services, and failing to cooperate in disciplinary investigation— Permanent disbarment.*

(No. 2021-0231—Submitted March 31, 2021—Decided September 21, 2021.)

ON CERTIFIED REPORT by the Board of Professional Conduct of the Supreme Court, No. 2019-029.

_____

**Per Curiam.**

{¶ 1} Respondent, John Joseph Okuley, of Columbus, Ohio, Attorney Registration No. 0076748, was admitted to the practice of law in Ohio in 2003. On September 26, 2018, we suspended him from the practice of law for one year with

six months conditionally stayed for his intentionally causing a collision with a bicyclist, provoking a physical altercation with an eyewitness to the collision, and making false statements about the incident to law enforcement and during the ensuing criminal, civil, and disciplinary proceedings. *Columbus Bar Assn. v. Okuley*, 154 Ohio St.3d 124, 2018-Ohio-3857, 111 N.E.3d 1173. We denied Okuley's amended motion for reinstatement in November 2019, and that suspension remains in effect. *Columbus Bar Assn. v. Okuley*, 157 Ohio St.3d 1492, 2019-Ohio-4738, 134 N.E.3d 1204.

{¶ 2} In a seven-count second amended complaint filed on October 18, 2019, relator, Columbus Bar Association, charged Okuley with professional misconduct arising from his representation of multiple clients with conflicting interests in litigation and in business transactions. The complaint further alleged that Okuley had continued to practice law while he was under suspension, had failed to update his online biographical information following his suspension, had failed to cooperate in two of the ensuing disciplinary investigations, and is no longer fit to practice law.

{¶ 3} The parties submitted stipulations of fact and numerous exhibits. A three-member panel of the Board of Professional Conduct conducted a hearing and heard testimony from Okuley and eight other witnesses. The panel issued a report finding that Okuley committed most of the charged misconduct and recommending that he be permanently disbarred.[1] The board adopted the panel's report in its entirety and no objections have been filed.

{¶ 4} After independently reviewing the record in this case, we adopt the board's findings of misconduct with one exception, and we permanently disbar Okuley from the practice of law in Ohio.

---

1. The panel unanimously dismissed 13 of the alleged rule violations based on the insufficiency of the evidence. Because those dismissals included dismissing all the violations alleged in Count Four, Count Four will not be discussed in this opinion.

**Misconduct**

*Counts One and Two: Conflicts of Interest Relating to the Rivers Edge Building*

{¶ 5} In January 2009, Jerry Mueller, Gerald Smith, and Okuley practiced at the law firm of Mueller, Smith & Okuley, L.L.C., which had offices located at 7700 Rivers Edge Drive in Columbus, Ohio. The Rivers Edge building was owned by 7700 RED One, Ltd. ("RED One"). RED One was owned by Mueller and Smith, Ltd., and B&O Capital, Ltd., which was owned by Okuley and his wife.

{¶ 6} Mueller left the firm in July 2011 following a dispute. The terms of his departure and valuation of his membership interest in Mueller and Smith, Ltd., were set forth in a termination agreement. Upon Mueller's departure, Okuley and Smith began operating as Okuley Smith, L.L.C., in the Rivers Edge building. Mueller and Smith, Ltd., then changed its name to Bluffview Edge, Ltd., and its sole member going forward was the Gerald L. Smith Trust.

{¶ 7} In December 2011, Mueller filed a lawsuit against Smith, Okuley, and a number of business entities including RED One, B&O Capital, and Bluffview Edge to enforce the terms of his termination agreement ("the Mueller litigation"). During the course of that litigation, Okuley appeared as legal counsel for RED One, B&O Capital, and himself, and he also represented the interests of Bluffview Edge. On one or more occasions, he also provided legal representation to Smith and to other related business entities. Although the parties entered into a formal settlement agreement in September 2016, disputes arose regarding the enforcement of that agreement. All told, the Mueller litigation spanned more than seven years.

{¶ 8} In 2013, the members of RED One adopted a resolution authorizing Okuley to serve as that entity's chief operating officer and tax-matters partner and to use the company's funds to perform necessary repairs and maintenance to the Rivers Edge building. By the end of 2016, the property taxes for the building were delinquent, the building had heating and air-conditioning problems, and Okuley Smith, L.L.C., was behind in its rent payments.

**{¶ 9}** According to Okuley, B&O Capital in November 2016 was prepared to invest in RED One to pay off tax liens on the building and to pay money that was owed under the settlement agreement in the Mueller litigation. To that end, Okuley prepared, executed, and recorded a $354,000 mortgage on behalf of RED One in favor of B&O Capital—while he represented both RED One and B&O Capital in the Mueller litigation. Following Smith's death on January 3, 2017, Smith's heirs objected to the mortgage. That mortgage was never funded and Okuley eventually released it.

**{¶ 10}** Okuley later arranged for RED One to borrow a total of $65,000 from Three Sisters Capital, Ltd., a company owned by his wife, his sister, and his sister-in-law, to pay approximately one-half of the money owed under the terms of the settlement that had been reached in the Mueller litigation. In an August 2017 filing with the Ohio secretary of state, Okuley represented that he was the attorney for Three Sisters. He then prepared a mortgage to secure the $65,000 loan. Okuley executed and recorded the mortgage on behalf of RED One on November 1, 2017. By that time, Bluffview Edge and Smith's son, as trustee on behalf of the Gerald L. Smith Trust, had filed a motion in the ongoing Mueller litigation to place RED One and the Rivers Edge property in receivership. That motion was granted on November 17, 2017, and the building was sold in May 2018. RED One was dissolved and the proceeds of the sale were distributed to various parties, with Three Sisters receiving a $30,000 settlement for its $65,000 loan.

**{¶ 11}** At Okuley's disciplinary hearing, Paul Rose, a professor at the Ohio State University Moritz College of Law, the college's director of the Law, Finance, and Governance Program, and the Associate Dean for Strategic Initiatives, testified regarding the business relationships at issue in this case. Rose—whose scholarship, teaching, and work as a lawyer have focused on corporate and business-entity formation and governance—spent approximately 17 hours reviewing documents supplied by relator and wrote a comprehensive report.

**{¶ 12}** Rose testified that the interests of RED One, Bluffview Edge, and B&O Capital were clearly adverse by November 2016 when RED One executed the mortgage in favor of B&O Capital. Not only was Okuley representing clients on opposite sides of the transaction, he was acting as the chief operating officer of RED One and had an ownership interest in B&O Capital, which also had an ownership interest in RED One. Okuley also represented both sides of the mortgage transaction between RED One and Three Sisters. Moreover, Rose testified that those transactions were occurring because RED One was in financial distress, Smith's heirs had clearly expressed concerns in the motion for receivership about conflicts of interest, and litigation regarding the various financial interests was likely as the parties sought payment from a limited pool of funds.

**{¶ 13}** One of the stipulated exhibits submitted at the disciplinary hearing was a letter dated March 12, 2013, that Okuley and another attorney at Okuley Smith, L.L.C., purportedly had sent to Okuley, Smith, RED One, and Red One's members. That letter stated that "there could be conflicting interests between the various defendants" in the Mueller litigation and that the law firm was willing to provide legal representation "[s]o long as there is no actual conflict" and the addressees "agree to waive any present conflicts." It also informed the addressees that they "should discuss the representation by Okuley Smith LLC with any other counsel of your choosing." But that letter was not signed by any of the addressees. And there is no evidence that any of the clients that Okuley represented regarding the Mueller litigation or the related mortgages ever gave informed, written consent concerning any potential or actual conflicts that might have been created by Okuley's representation.

**{¶ 14}** The board found that Okuley's representation of multiple parties in the Mueller litigation and the related transactions created multiple conflicts of interest. For example, Okuley represented RED One and its members, as well as Three Sisters, when the interests of those entities were not aligned—most notably

when they were on opposite sides of mortgage transactions. *See Columbus Bar Assn. v. Ewing*, 63 Ohio St.3d 377, 379-380, 588 N.E.2d 783 (1992) (recognizing that representation of both the lender and the borrower within the same transaction creates a conflict of interest). The board found that the interests of Okuley's clients were adverse and that there was a substantial risk that Okuley's ability to consider, recommend, or carry out a course of action for any one of his clients was materially limited by his responsibilities to his other clients and by his own personal interests. Consequently, the board found that Okuley's conduct violated Prof.Cond.R. 1.7(a)(1) (prohibiting a lawyer's continued representation of a client if the representation of that client will be directly adverse to another client) and 1.7(a)(2) (providing that a lawyer's continued representation of a client creates a conflict of interest if there is a substantial risk that the lawyer's ability to represent the client will be materially limited by the lawyer's responsibilities to another client, former client, or third person or by the lawyer's own personal interests).

{¶ 15} The board also found that Okuley was unable to provide competent and diligent representation to each of the affected clients due to the various conflicts of interest. Moreover, there was no signed writing in which the clients gave their informed consent to his representation of those conflicting interests. And to the extent that Okuley's representation involved one client's claims for money against another client in the same proceeding, those conflicts could not be waived. Therefore the board found that Okuley's conduct violated Prof.Cond.R. 1.7(b) (prohibiting a lawyer from accepting or continuing the representation of a client if such representation would create a conflict of interest, unless the lawyer would be able to provide competent, diligent representation to each affected client, each affected client gives informed consent in writing, and the representation is not otherwise prohibited by rule or law) and 1.7(c)(2) (prohibiting a lawyer from accepting or continuing a representation if the representation would involve the

assertion of a claim by one client against another client represented by the lawyer in the same proceeding).

{¶ 16} Given the numerous conflicts of interests arising from Okuley's representation of multiple clients—including himself, his wife, Smith, and various business entities—regarding the Mueller litigation and the related mortgages without first obtaining informed consent to those conflicts in writing, the board also found that Okuley violated the following disciplinary rules:

- Prof.Cond.R. 1.8(a) (prohibiting a lawyer from entering into a business transaction with a client or knowingly acquiring an ownership, possessory, security, or other pecuniary interest adverse to a client unless (1) the terms of the transaction are fair and reasonable and fully disclosed to the client in writing, (2) the client is advised in writing of the desirability of obtaining independent legal counsel, and (3) the client gives informed consent in a writing signed by the client to the essential terms of the transaction and the lawyer's role in the transaction);

- Prof.Cond.R. 1.13(a) (providing that a lawyer employed or retained by an organization represents the organization acting through its constituents and owes allegiance to the organization and not to its constituents or any other person connected with the organization); and

- Prof.Cond.R. 1.13(e) (providing that a lawyer representing an organization may also represent any of its directors, officers, employees, members, shareholders, or other constituents, subject to the consent requirements of Gov.Bar R. 1.7, and that if written consent is required, it shall be given by an appropriate official of the organization—not by the individual who is to be represented—or by the shareholders).

{¶ 17} We adopt the board's findings of misconduct.

*Count Three: Practicing Law While Under Suspension*

{¶ 18} Okuley's brother, who is also an attorney, worked for Okuley Smith, L.L.C., from April 2017 through February 2018. In February 2018, April Cottle met with Okuley and his brother and retained the law firm to represent her in a trademark-registration matter regarding one of her business's products. Cottle corresponded with Okuley by e-mail and signed some documents connected to the trademark application electronically in April 2018. She did not hear anything about the status of her matter until Karie Gallegos, a secretary employed by Okuley Smith, reached out to her in about late September of that year to confirm Cottle's e-mail address.

{¶ 19} On October 5, 2018—nine days after we suspended Okuley's license to practice law—someone sent an e-mail to Cottle from Okuley's e-mail address and copied Okuley's brother and Gallegos on the e-mail. That e-mail stated that the United States Patent and Trademark Office had rejected Cottle's trademark application as being "descriptive." The e-mail informed Cottle that the registration could be amended and placed on the "Supplemental Register" and that after five years, it could then be moved to the principal register. The e-mail further explained that "[w]hat this means is that if you ever needed to litigate on the trademark, you would need to prove that the mark was distinctive and not merely descriptive" and that "[i]n essence, the registers are a distinction without a significant difference to your use of the mark." The e-mail included an invoice for $300 and stated that with Cottle's authorization, Okuley's brother could file the amendment.

{¶ 20} Gallegos forwarded the October 5, 2018 e-mail to Cottle at a different e-mail address on November 8, 2018. On November 21, 2018, Okuley called Cottle to discuss her trademark application and Cottle recorded the call. During that conversation, Okuley explained the legal options set forth in the e-mail, explained the timing and risks of those options, debated whether the law firm had dropped the ball in handling her matter, and suggested that his brother had done

most of the work in the matter and had sent the recent e-mail. Okuley also expressed his opinion—based upon his knowledge and experience—that the only people who would have had standing to oppose Cottle's trademark were members of Cottle's own family.

{¶ 21} At his disciplinary hearing, Okuley admitted that the October 5 e-mail to Cottle contained legal advice, but he denied that he had sent it. He claimed that he had drafted and sent the e-mail to Cottle in September and had instructed Gallegos to resend the e-mail to Cottle using his brother's e-mail address in October. But the documentary evidence shows that Okuley sent the e-mail to Cottle on October 5 and then forwarded it to Gallegos on November 8, 2018, identifying it as "the September letter to April," and instructed Gallegos to forward it to Cottle. Gallegos testified, and the documentary evidence verifies, that Gallegos forwarded the content of the October 5 e-mail to Cottle later in the day on November 8 from her own e-mail address with Okuley Smith. Additionally, Okuley's brother testified that he had not agreed to continue working on Cottle's matter, directed anyone to prepare a $300 invoice in that matter, or authorized Okuley to send any e-mails on his behalf when he left the firm in February 2018. Okuley later explained that he was trying to take care of Cottle while he was suspended from practicing law and thought that he had an arrangement with his brother to help him.

{¶ 22} The board found that Okuley continued to practice law while under suspension in violation of Prof.Cond.R. 5.5(a) (prohibiting a lawyer from practicing law in a jurisdiction in violation of the regulation of the legal profession in that jurisdiction) and that he violated Prof.Cond.R. 8.4(c) (prohibiting a lawyer from engaging in conduct involving dishonesty, fraud, deceit, or misrepresentation) by attempting to mislead Cottle into thinking that his brother was the one who had sent her the October 5, 2018 e-mail.

{¶ 23} We adopt these findings of misconduct.

*Count Five: Failure to Respond to a Disciplinary Investigation*

{¶ 24} Relator commenced its investigation of Okuley's misconduct in January 2019. Okuley has stipulated that from January through August 2019, relator sent him four letters of inquiry (two regarding the Cottle matter and two regarding Okuley's online biographical information) and that he failed to respond to those letters.

{¶ 25} At his August 28, 2019 deposition, Okuley testified that due to the aftereffects of chronic pain that he suffered as the result of injuries that he had sustained in a 2016 automobile accident, he did not really care much about the letters from relator. After that deposition, he responded to the letters regarding the Cottle matter, but he never responded to relator's inquiries regarding the biographical information. The board found—and we agree—that Okuley's failure to respond to those letters of inquiry violated Prof.Cond.R. 8.1(b) (prohibiting a lawyer from knowingly failing to respond to a demand for information by a disciplinary authority during an investigation).

*Count Six: False Communication Regarding a Lawyer's Services*

{¶ 26} Following his suspension from the practice of law in September 2018, Okuley failed to update the biographical information over which he retained control on the Internet. On January 7, 2019, the law firm's website still identified him as one of the attorneys working at the firm and stated that "Dr. Okuley is admitted to practice law in Ohio." On that date, his profile on the professional-networking website LinkedIn stated that he was a patent attorney at Okuley Smith, L.L.C. Neither the firm's website nor Okuley's LinkedIn profile indicated that he had been suspended from the practice of law. Even after relator sent Okuley a letter asking him to explain why he continued to hold himself out as an attorney on both of those websites—and after relator filed its initial complaint in this case—the information on those sites remained unchanged.

**{¶ 27}** The board found that this conduct violated Prof.Cond.R. 7.1 (prohibiting a lawyer from making or using false, misleading, or nonverifiable communication about the lawyer or the lawyer's services). We accept this finding of misconduct.

*Count Seven: Conduct Adversely Reflecting on Okuley's Fitness to Practice Law*

**{¶ 28}** In the final count of its second amended complaint, relator alleged that Okuley engaged in conduct that adversely reflects on his fitness to practice law in violation of Prof.Cond.R. 8.4(h). This court has held:

> In order to find a violation of Prof.Cond.R. 8.4(h), there must be clear and convincing evidence that the lawyer has engaged in misconduct that adversely reflects on the lawyer's fitness to practice law, even though that conduct is not specifically prohibited by the rules, or there must be proof that the conduct giving rise to a specific rule violation is so egregious as to warrant an additional finding that it adversely reflects on the lawyer's fitness to practice law.

*Disciplinary Counsel v. Bricker*, 137 Ohio St.3d 35, 2013-Ohio-3998, 997 N.E.2d 500, ¶ 21.

**{¶ 29}** To support its allegation that Okuley had demonstrated that he was unfit to practice law in violation of Prof.Cond.R. 8.4(h), relator primarily relied upon the facts that Okuley was being treated for depression and "avoidance" when his misconduct occurred and that he suffered from posttraumatic migraines after he was seriously injured in a 2016 automobile accident. The board found that although Okuley blamed his medical conditions for his failure to respond to relator's letters of inquiry, he presented no medical evidence to establish the existence of those conditions.

**{¶ 30}** We have never found that the existence of mental or physical disorders alone is sufficient to establish that a lawyer has engaged in conduct that adversely reflects on the lawyer's fitness to practice law in violation of Prof.Cond.R. 8.4(h). On the contrary, we have expressly declined to find a violation of Prof.Cond.R. 8.4(h) when a relator has relied solely on the fact that a respondent has a mental or substance-use disorder to establish the existence of the violation, noting that such conditions "often lead to ethical violations but are not themselves ethical violations." *Columbus Bar Assn. v. Allerding*, 123 Ohio St.3d 382, 2009-Ohio-5589, 916 N.E.2d 808, ¶ 13.

**{¶ 31}** Here, the board found that Okuley violated Prof.Cond.R. 8.4(h) by falsely stating that (1) his brother was the responsible party in the law firm's handling of Cottle's trademark registration, (2) he had instructed Gallegos to send the October 5, 2018 e-mail to Cottle before he was suspended from the practice of law, and (3) he could not access his firm's website or his LinkedIn profile to remove all references to his status as a licensed attorney. But relator did not allege those facts with respect to this count and we have already found that Okuley's misrepresentations regarding the Cottle matter violated Prof.Cond.R. 8.4(c). Moreover, relator has failed to establish that any other conduct with respect to this alleged violation either adversely reflects upon Okuley's fitness to practice law, even though it is not specifically prohibited by the rules, *or* is so egregious as to warrant an additional finding that it adversely reflects on the lawyer's fitness to practice law, as required by our decision in *Bricker*, 137 Ohio St.3d 35, 2013-Ohio-3998, 997 N.E.2d 500, at ¶ 21. Consequently, we reject the board's finding that relator has established a violation of Prof.Cond.R. 8.4(h).

## Sanction

**{¶ 32}** When imposing sanctions for attorney misconduct, we consider all relevant factors, including the ethical duties that the lawyer violated, the

12

aggravating and mitigating factors listed in Gov.Bar R. V(13), and the sanctions imposed in similar cases.

**{¶ 33}** The board found that five aggravating factors are present in this case. Okuley has prior discipline, engaged in a pattern of misconduct, committed multiple offenses, failed to cooperate in the disciplinary process, and refused to acknowledge the wrongful nature of his conduct. *See* Gov.Bar R. V(13)(B)(1), (3), (4), (5), and (7). The board also found that none of the mitigating factors set forth in Gov.Bar R. V(13)(C) are present and noted that although Okuley suggested that health issues may have contributed to some of his misconduct, he did not submit any evidence to establish those conditions as qualifying mitigating disorders under Prof.Cond.R. V(13)(C)(7).

**{¶ 34}** In a posthearing brief, relator argued that Okuley's misconduct warranted permanent disbarment. Although the panel chair gave Okuley the opportunity to respond to relator's brief and to submit character letters after the hearing, Okuley did not avail himself of those opportunities.

**{¶ 35}** In determining the appropriate sanction for Okuley's misconduct, the board considered several cases in which we imposed indefinite suspensions on attorneys who continued to engage in limited instances of the practice of law while their licenses were under suspension and then failed to cooperate in the ensuing disciplinary investigations. In those cases, the attorneys largely continued to practice law in violation of continuing-legal-education and registration suspensions—conduct for which we have routinely imposed indefinite suspensions. *See Columbus Bar Assn. v. Squeo*, 133 Ohio St.3d 536, 2012-Ohio-5004, 979 N.E.2d 321; *Disciplinary Counsel v. Higgins*, 117 Ohio St.3d 473, 2008-Ohio-1509, 884 N.E.2d 1070. In this case, however, Okuley continued to engage in the practice of law in violation of a suspension imposed for dishonesty and other related misconduct.

{¶ 36} Relying on a number of cases in which we permanently disbarred attorneys who continued to engage in the practice of law while their licenses were under suspension for professional misconduct, the board recommends that we permanently disbar Okuley.

{¶ 37} For more than 25 years, we have recognized that "[a]bsent any mitigating circumstances, the normal penalty for ignoring previous orders of the court and continuing to practice law while under suspension is disbarment." *Disciplinary Counsel v. Chavers*, 80 Ohio St.3d 441, 443, 687 N.E.2d 415 (1997), citing *Disciplinary Counsel v. McDonald*, 71 Ohio St.3d 628, 646 N.E.2d 819 (1995). Following that line of cases in *Cleveland Metro. Bar Assn. v. Cicirella*, 133 Ohio St.3d 448, 2012-Ohio-4300, 979 N.E.2d 244, ¶ 11, we acknowledged that "disbarment is the presumptive sanction for continuing to practice law while under suspension." We then disbarred Cicirella for drafting living trusts and agreeing to perform additional legal services—all while her license was suspended for other professional misconduct. No mitigating factors were present. Aggravating factors included Cicirella's prior discipline, dishonest or selfish motive, multiple offenses, failure to cooperate in the disciplinary process, refusal to acknowledge the wrongful nature of her conduct, and harm to a vulnerable client.

{¶ 38} In *Disciplinary Counsel v. Fletcher*, 135 Ohio St.3d 404, 2013-Ohio-1510, 987 N.E.2d 678, an attorney continued to represent two existing clients and began to represent two additional clients while his license was suspended for professional misconduct. He identified himself as an attorney, counseled those clients, appeared and represented them in court, and filed documents on their behalf for more than a year. He also neglected the legal matter of one of those clients and offered false testimony during a deposition about his conduct. Although Fletcher cooperated in the resulting investigation and made timely restitution to his clients, we agreed with the board's assessment that those mitigating factors did not justify a departure from the presumptive sanction of permanent disbarment.

**{¶ 39}** We have also permanently disbarred an attorney who prepared a letter for clients while his license was under suspension for professional misconduct, signed the letter using the name of another attorney without that attorney's permission, and prepared a complaint on behalf of those clients. *Cincinnati Bar Assn. v. Shabazz*, 74 Ohio St.3d 24, 656 N.E.2d 325 (1995).

**{¶ 40}** Here, Okuley continued to practice law by giving legal advice to Cottle on two occasions after we had suspended his law license and then attempted to blame his brother and his secretary for his actions. The presumptive sanction for that misconduct alone is permanent disbarment. But Okuley also committed additional misconduct before and after his license was suspended. The totality of that misconduct, combined with the significant aggravating factors present in this case—including Okuley's failure to acknowledge the wrongful nature of his misconduct—and the complete absence of mitigating evidence make permanent disbarment particularly appropriate here.

## Conclusion

**{¶ 41}** Accordingly, John Joseph Okuley is hereby permanently disbarred from the practice of law in Ohio. Costs are taxed to Okuley.

Judgment accordingly.

O'CONNOR, C.J., and KENNEDY, FISCHER, DEWINE, DONNELLY, STEWART, and BRUNNER, JJ., concur.

_____

Isaac, Wiles, Burkholder & Teetor, L.L.C., and Joanne S. Beasy; Anne M. Valentine; and Kent R. Markus, Bar Counsel, and Thomas E. Zani, Deputy Bar Counsel, for relator.

John Joseph Okuley, pro se.

_____